Shippen, C. J.
Certainly the British act does not bind us, proprio vigore; but the system of national policy, which dictated the law, has been adopted by our courts. We believe, that policies made here, at least by the incorporated companies, do not retain the words “interest or no interest.” But if it should come out in proof, in the language of Ld. Mansfield, that a man had insured 2000I., and had interest on board to the value of a cable only, he would not be entitled to recover under such a policy. 2 Burr. 1171.
At common law, a person might have insured without having any interest. 8 Term Rep. 23. But conceding that the spirit of the British act of parliament is applicable to our local situation, what are the circumstances of the present case ? Pritchet and Starr were the sole owners of the brig and cargo. They contemplated a double outward voyage to two ports in the West Indies, and made their insurances accordingly. Laying aside the mercantile usage of this port, to insure profits as goods, which has been fully proved, it is obvious, that if the cargo had reached Martinique, it would have acquired the superadded value of the freight. It is of no moment as to the point in question, whether the goods were transported thither in the vessel insured or of a stranger. The cost to the insured is the same. Now on the most accurate estimate of the cargo, it turns out, that the freight thereof, added to the first cost of the goods and the premium of insurance, exceeds the valuation in the policy only three dollars and twenty-eight cents. It cannot be *pretended, therefore, that the cargo was greatly overvalued, *462] or that the insured had only a colourable interest. Although in Tonge v. Watts, 2 Stra. 1251, Lord Chief Justice Lee held that the ship being lost before the cargo was .actually on board, though ready to be shipped, the insured, who had insured the freight as well as the ship, could not recover the former; yet it was afterwards determined in Montgomery v. Egginton, that the insured upon a valued policy on freight, is entitled to recover the whole amount, though part of the goods only were on board at the time the ship was lost, the rest being ready to be shipped. 3 Term Rep. 362. It has been also adjudged, that on a mixed policy of a peculiar sort, partly a wager policy, partly an open one, and within the exception of the statute of 19 Geo. 2, c. 37, the insured was entitled as for a total loss, and the policy being valued,'and fairly so without fraud or misrepresentation, the insured had agreed to the value, and was concluded to dispute it. 4 Burr. 1969. In Lewis et al. v. *462 Rucker, 2 Burr. 1171, Ld. Mansfield says, “a valued policy “is not to be considered as a wager policy, or like interest or no “ interest. It is settled, that upon valued policies, the merchant “need only prove some interest to take it out of 19 Geo. 2, and “if more was required, the agreed valuation would signify nothing. The effect of the valuation is only fixing conclusively “the prime cost. If it be an open policy, the prime cost must “be proved. In a valued policy it is agreed.”
Serjeant Marshall, from whose late compilation on the law of insurance the authorities on the part of the defendants have been extracted, lays down the law of England to be not quite so rigid as in France. Where a valued policy is bona fide meant as an indemnity, the courts will not enquire very minutely whether the valuation be very near the true interest of the insured. A small excess ought not to be regarded. Considering the uncertainty of every valuation, a scrupulous exactness in this point would only occasion endless litigation. 1 Marsh. 202. Indeed his book does not seem equal in point of merit to Park, whose accuracy has never been doubted, and who has argued most of the late cases in the King’s Bench. The strictures which the former had made on decisions and doctrines, which seemed to him to militate against any acknowledged principle of law, unsparingly, do not always appear to be well founded. (See 1 Marsh. Pref. VII.) The inference he has drawn from 2 Vern. 716, (in his 1st vol. 100,) seems unwarranted by the Lord Chancellor’s decree. It was a valued policy on goods at 600l. The insured had abandoned, and part of the goods had been saved. It was referred to a master to examine the value of the goods so saved, and to *deduct it out of the 600l. The decree therefore only shews that the insured was not allowed [*463 to have more than the amount of his valued policy, and that he should account for the value of the articles saved, which being in his own hands, or of his agent, were to be deducted from the 600l.
Yeates, J.
gave the charge of the court, in the absence of the Chief Justice, who was indisposed.
The verdict must necessarily be for the plaintiff. But whether it should be for the 829 dollars 31 cents which the defendants have admitted to be due by their late tender, and yet have not brought the same into court and paid off the costs, or for the 4812 dollars 9 cents, the balance claimed by the plaintiff is the only question.
The British statute of 19 Geo. 2, c. 37, passed in 1746, and was intended to put an end to insurances without real interest, which in process of time had become a cover for mere gaming contracts. (Vide history of wager policies since the revolution, in 1 Marsh. 99.) There is a seeming contrariety between the opinions of Park and Marshall, whether under the statute the valuation specified in a valued policy is to be the measure of *463 damages in case of a total loss. They however agreed in this, that where valued policies are used merely as a cover to a wager, they would be considered as an evasion of the statute, as in the instance put by Ld. Mansfield, of one insuring 2000I. and having interest on board to the value of a cable only. 2 Burr. 1171. If the property be much over valued, it must be done with a bad view, either to gain, contrary to the words of the act, or with some view to a fraudulent loss. Ibid. Park 122. 1 Marsh, 110.
Serjeant Marshall, in his useful treatise, professes in his preface, to point out any decision, or any doctrine advanced, which militated against any acknowledged principle of law, and to treat them with a proper freedom, but with decency and respect.— Hence, he has been led to consider the usage, though sanctioned by the approbation of great and eminent judges, that in cases where the interest of the insured is less than the sum insured in a valued policy, to pay the whole sum insured, upon a total loss, as irreconcileable with the provisions of the stat. of 19 Geo. 2, c. 37, and tending to convert every.loss into a total one. 1 Marsh. hi. And he expressly asserts, that the value in the policy, ought only to be considered as prima facie evidence of the amount of the interest of the insured; which being admitted on his mere representation, the insurer is not thereby concluded, but may dispute the amount of the interest if it be over valued, as well in an action upon a valued policy, as upon an open one. But *he nevertheless agrees in the passage already cited, 4 that the usage which he condemns, is uniform and constant, and approved of by authority; and that courts of justice will not scrupulously examine the valuations in valued policies, where an indemnity was honestly intended. 1 Marsh. 202.
We shall confine ourselves to the case immediately before us. We mean to give no opinion, whether the apprehensions of MaRSI-iall, as to the true intention of the English statute, are well or ill founded.
The Chief Justice during the argument, conveyed the sentiments of the whole court. We have adopted the policy and principles which gave rise to the act of parliament, both in courts of justice and by commercial usage; but we are not prepared to say, that every particular provision or resolution under it, has been engrafted into our system of law. An insurance amongst us, is a contract of indemnity. Its object is, not to make a positive gain, but to avert a possible loss. A man can never be said to be indemnified against a loss which can never happen to him. There cannot be an indemnity without a loss, nor a loss without an interest. A policy therefore made without interest, is a wager policy, and has nothing in common with insurance, but name and form. 1 Marsh. 30, 97. It is not subservient to the true interests of fair trade and commerce; but is pregnant with as much mischief, both public and private, as can proceed from any species of gaming, which the legislature has hitherto found it necessary to repress. Ib. 98. Every species of *464 gaming contracts, wherein the insured having no interest, or a colourable one merely, or having a small interest, much over values it in a valued policy, under the cloke of insurances, are reprobated both by our law and usage.
Cited in 4 Wh. 76 to show that gambling policies are deemed void by the law of this state. Cited for the same purpose in 6 Wh. 179; 55 Pa. 298; 104 Pa. 77.
Cited in 6 W. & S. 445 to show that the leading principles of the act of 19 G. 2, c. 37, which requires an interest for the foundation of amarine insurance, have been adopted in Pennsylvania by commercial usage.
It is obvious, that if the mercantile practice of this port has been sufficiently established, that profits are understood to be insured under the character of goods merely, an end is at once put to the present question. Because $3817 44 could not be deemed an extravagant profit on the cargo, at a West India market. But independent of this usage, does not the case itself present such outlines as to evince, that the cargo has been but little over valued ? Two voyages were meditated by the insured, “ at and from Philadelphia, to one port in Martinico, and at and “from thence to St. Thomas’s” and the defendants subscribed the policies on the brig and cargo for both voyages, and received a premium proportioned to the risk. Admit the freight of the vessel was not insured, still the aggregate amount of the prime cost of the goods, premium, and of the expences *necessarily attendant on the transportation of the goods to [*465 Martinico, formed a fair object of insurance.
The plaintiffs do not seek an indemnification in the light of ship-holders for the loss of their freight, but as owners of the cargo, for the additional cost of conveying it to Martinico. This appears to be a fair and honest transaction, without any kind of misrepresentation. It possesses no single feature of a gambling policy. The defendants have received the large premium of $3501 on both policies, on the entire valuations, and are therefore bound to make up the whole loss. Should a different doctrine preyail, a valued policy, instead of operating as an admitted agreed value of the property on the trial, would be of no possible use, but an injury to the insured. If the voyage should be safely performed, the underwriters would retain the full premium on the whole valuation ; but if it should be unsuccessful, the insured would only recover the amount of the first cost of the goods put on board, with the proper premium thereon. These remarks go on the ground of the insurance being intended as a real indemnity, and not where the policy has been effected on gaming principles.
The jury found a verdict for the plaintiff for $48i2Tjhy, without leaving the bar.