# Dursie *v.* American Union Insurance Company of New York, Appellant.

Argued November 11, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*William T. Creehan,* with him *White, Jones and Gregg,* for appellant.

*Allen S. Gordon,* with him *Sylvan Libson,* for appellees.

OPINION PER CURIAM, March 24, 1966:
The six judges who heard the argument of this appeal being equally divided in opinion, the judgment of the court below is affirmed.

OPINION BY WATKINS, J., IN SUPPORT OF AFFIRMANCE:
This is an appeal from the judgment of the Court of Common Pleas of Allegheny County in favor of Leona Dursie, also known as Leona Dursi, and Rede-

velopment Authority of Allegheny County, plaintiffs-appellees, and against American Union Insurance Company of New York, the defendant-appellant, in the sum of $7900 for a fire loss under a case stated. The facts are succinctly stated in Judge LEGNARD'S opinion below.

"On March 12, 1959, the plaintiff Authority adopted a resolution condemning plaintiff Dursie's real estate. On October 29, 1959, a confirming resolution was passed. On December 23, 1959, plaintiff Authority filed a bond which was approved by Order of this Court, and plaintiff Authority was authorized to enter into possession of the premises. On April 19, 1960, while the fire insurance policies hereinbefore mentioned were still in full force and effect, the five insured dwellings were completely destroyed by fire. The actual cash value of the five dwellings at the time of the loss was $7900. On August 8, 1961, the Board of Viewers of Allegheny County awarded plaintiff Dursie the sum of $10,175 for the taking of her real estate and in consideration thereof, plaintiff Dursie thereafter assigned her interest in the aforesaid insurance proceeds to the plaintiff Authority. The sum awarded plaintiff Dursie by the Board of Viewers has been paid."

The plaintiffs demanded the proceeds of the policies, the defendant denies the plaintiff's right to the proceeds on the ground that all title to the property in question had passed from the plaintiff Dursie prior to the fire; plaintiff did not possess an insurable interest at the time of the loss so that neither she nor her assignee is entitled to the proceeds. The issue presented and stipulated by the parties, is as follows: "Did plaintiff Dursie, at the time of the fire loss, have an insurable interest under the fire insurance policies issued for the properties condemned by plaintiff Authority which would entitle the plaintiffs to the proceeds of the said fire insurance policies?"

"While it may be difficult to give a comprehensive and at the same time accurate definition of an insurable interest, it is doubtless well settled that not only any qualified property in the thing insured, but also any reasonable expectation of legitimate profit or advantage, to spring therefrom, is a proper subject of insurance. Right of property is not always an essential ingredient of an insurable interest. Loss or injury from its destruction, or benefit from its preservation, may be sufficient. As a general rule, whatever furnishes a reasonable expectation of pecuniary benefit from the continued existence of the subject of insurance is a valid insurable interest." *International Marine Ins. Co. v. Winsmore*, 124 Pa. 61, 16 A. 516 (1889) ; Goldin, Law of Insurance in Pennsylvania, 2d Ed., Vol. I, page 93 (1946).

In *Heidisch v. Globe & Republic Ins. Co. of America*, 368 Pa. 602, 84 A. 2d 566 (1951) the Supreme Court held that an owner of property which was destroyed by fire after having been condemned by eminent domain but before he was paid by the condemnor had an insurable interest in the fire policy. In that case the facts were almost identical to the instant one. The property had been condemned by Allegheny County and more than two years later at a time when the dwelling was not yet demolished the fire policies were issued. An award was made by the viewers on August 19, 1949, from which the plaintiffs appealed and a consent verdict was entered January 11, 1950, which was paid in full ten days later. On August 28, 1949, a new policy of insurance had been issued to the plaintiff and on September 29, 1949, which was, of course, subsequent to the taking, the appointment and the award of the viewers but prior to the consent verdict and its payment, the building was destroyed by fire. The Supreme Court likened the situation to an agreement of sale holding that the legal title was held by the plaintiff

as security for payment of the award so that an insurable interest existed. This is a view held in a number of jurisdictions. See: 29 A.L.R. 2d 888.

The contrary view is expressed in *Braddock Borough v. Bartoletta*, 409 Pa. 281, 186 A. 2d 243 (1962), where the Supreme Court in a per curiam opinion affirmed the court below in the case reported in 28 Pa. D. & C. 2d 529. This case held that the condemning resolution of the Redevelopment Authority of Allegheny County divested all legal title to the property from its owner so that later agreements between the parties were not subject to a real estate transfer tax. The act in question provided for a tax only upon "the transfer of real property or of any interest in real property."

In *Goodman v. City of Bethlehem*, 323 Pa. 58, 185 A. 719 (1936), at page 63, the Supreme Court said: "... Ordinarily the title to property taken under right of eminent domain passes to the condemnor when a bond to secure the damages has been filed and has been accepted by the owner or approved by the court ...."

There is language in *Peoples Natural Gas Co. Appeal*, 399 Pa. 226, 160 A. 2d 391 (1960) which also indicates that title to the land passed on the filing of the bond. In *Briegel v. Briegel*, 307 Pa. 93, 160 A. 581 (1931), it was held that: "When the land is taken by condemnation, title passes from the owner immediately."

The court below in discussing the conflict in the cases stated:

"All apparent authorities to the contrary notwithstanding, we have not been referred to nor has independent research disclosed, any case whatsoever which invalidates, distinguishes, or in any way interferes with the applicable eminent domain statutes which prevailed at the time relevant hereto, all of which state that title shall pass when compensation is paid. See 16 PS 5627, 16 PS 2427; 53 PS 46412; 53 PS 56913; 53 PS 66012; 53 PS 37814; 26 PS 124.

"On the other hand, not one governmental subdivision code or eminent domain law has ever stated that title vests in the condemnor as of the time a bond is filed. On the contrary, the statutes involving the filing of bonds state that the condemnor shall then have the right to immediate possession."

There is a lot of confusion in the cases as to when is the time of taking and when title vests under the various condemnation statutes. In the instant case if title had passed from the owner at the time of the resolution or at the time of the filing of the bond, he had lost his property not only before he had been paid but before the amount of his damages had been determined by the machinery of the statute. There is value uncertainty that comes from the proof of loss in a suit on a policy before a jury and value uncertainty that comes from the fair market value before and after a taking that must be determined by the viewers or the jury and these value uncertainties may constitute the "reasonable expectation of legitimate profit or advantage" under the definition of insurable interest.

As the court below indicated it is difficult to reconcile these opinions with the *Heidisch* case. However, the decision as to whether legal title, equitable title or both passed at the time of the resolution or the filing of the bond is not necessary to the decision as to whether or not this plaintiff had an insurable interest in the property. If, in fact, legal title had passed he still had certain property rights to support an insurable interest, call it what you will, a qualified title that is insurable, or an interest in property. After the taking: (a) the owner had the right to compensation; (b) he had the right to petition for the appointment of viewers to determine compensation; (c) he had the right to appeal from the decision of the viewers, if dissatisfied with the award; (d) he had a right to appeal from a decision of a jury as to the amount of the compensa-

tion; (e) he had the right to damages for delay in payment from the date of the taking to the date of full payment; (f) the owner had the right to recover back the property if the condemnor abandons the project and the owner consents to take it back; (g) the condemnor had the right under the provisions of §2633 of the Second Class County Code, 16 PS §5633, to discontinue the condemnation proceedings; the owner had the right to constrain condemnation proceedings by injunction when the proceedings are improper and inequitable even after the filing of a bond: 13 P.L.E. page 404; and the condemnor had the right to correct a mistake in the description of the condemned premises after the filing of the bond. *Peoples Natural Gas Co. Appeal,* supra.

All these rights of the plaintiff-owner are involved in the condemned real estate regardless of when title passed. The owner certainly had a qualified property in the thing insured, a reasonable expectation of legitimate profit or advantage, and a benefit from its preservation. The very figures involved in this case indicate an insurable interest. The actual value of the property destroyed by fire was determined to be $7900; the award of the viewers amounted to $10,175. In the *Heidisch* case the Supreme Court held that the condemnee had a sufficient insurable interest to recover for a fire loss occurring after the award of the viewers but before payment. The fire loss in this case occurred before the award of the viewers and before payment.

Since plaintiff has assigned in writing that she stands as trustee for the benefit of the plaintiff Authority which now has paid the award the court avoids the disturbing prospect of possible double damages.

The new Eminent Domain Code of June 22, 1964, P. L. 84, 26 PS §1-101, makes an effort to clear up the confusion as to the "date of taking" and "passage of title". Section 402 of the Eminent Domain Code provides as follows: "Condemnation; Passage of Title;

Declaration of Taking. (a) Condemnation, under the power of condemnation given by law to a condemnor, which shall not be enlarged or diminished hereby, shall be effected only by the filing in court of a declaration of taking, with such security as may be required under section 403 (a), and thereupon the title which the condemnor acquires in the property condemned shall pass to the condemnor on the date of such filing, and the condemnor shall be entitled to possession as provided in section 407."

But section 408 of the new code provides that upon the relinquishment of the property by the condemnor title is revested in the condemnee as of the date of the filing of the declaration of taking. The property would then be in the same position as if there had been no condemnation so that the qualified property rights as set forth in this opinion continue to exist in the owner until paid the compensation required by the act and are the subject of an insurable interest.

ERVIN, P. J., and WRIGHT, J., join in this opinion.

---

OPINION BY MONTGOMERY, J., IN SUPPORT OF REVERSAL:

Regardless of what title remains in the condemnee or what insurable interest he may have in the property condemned following its condemnation, nothing remains in his name after he has accepted a bond as security for his damages or such a bond has been approved by the proper court. The law as stated by the late Mr. Justice BOK in his dissenting opinion in *Peoples Natural Gas Company Appeal,* 399 Pa. 226, 237, 160 A. 2d 391, 396 (1960), is the law applicable to the present situation: "The instant the bond is approved it becomes the equivalent of cash, the owner's right to compensation becomes vested and absolute according to the bond, and title to the land condemned actually passes to the condemnor . . ." This statement of the law satisfies the re-

quirements of Article I, Section 10 of the Pennsylvania Constitution of 1874 which provides that ". . . nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or *secured.*" (Emphasis supplied) *Braddock Borough v. Bartoletta,* 409 Pa. 281, 186 A. 2d 243 (1962), is in accord. The statutory statements to the effect that title passes on payment are fully met by the filing of a bond and do not require the actual passing of money.

In *Heidisch v. Globe and Republic Insurance Company of America,* 368 Pa. 602, 84 A. 2d 566 (1951), relied on by the lower court and the majority of this Court, no bond was filed as security for the condemnees' damages. Consequently, they had title of some sort as security for the payment of their damages and had an insurable interest in the property for that reason. It is therefore readily distinguishable.

The opinion in support of affirmance emphasizes what rights a condemnee has after such a bond has been filed, but such rights do not include the retention of title in the condemned property as to constitute an insurable interest therein.

I would reverse the judgment entered for the plaintiffs and order it entered for the appellant-defendant.

JACOBS and HOFFMAN, JJ., join in this opinion.