## Van Cure et al., Appellants, *v.* Hartford Fire Insurance Company.

Argued October 11, 1968. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*A. Morris Ginsburg,* for appellant.

*H. L. Abrams,* for intervening appellant.

*Thomas Lewis Jones,* with him *White, Jones and Gregg,* for appellee.

OPINION BY MR. JUSTICE COHEN, May 9, 1969:

This is an assumpsit action in which appellees, two insurance companies, denied coverage to appellant because at the time of the loss appellant no longer had an insurable interest. The facts as stipulated by the parties are as follows:

On March 10, 1961 the appellee, Hartford Fire Insurance Company, issued to Mrs. Van Cure (appellant) a three year policy covering the building and garage involved in this action. On January 11, 1963, the United States Fidelity and Guarantee Company did likewise. For the purposes of this opinion we shall consider the two insurer-appellees as one.

The Urban Redevelopment Authority of Pittsburgh (Authority) passed a resolution on September 7, 1962, indicating its intention to condemn the fee simple of the property here involved; and it tendered a $37,000 bond which was refused. The court of common pleas, upon petition, approved a bond in this amount on December 10, 1962, and granted the Authority permission to enter the premises and take possession. The Authority, however, permitted Mrs. Van Cure to remain in possession in order to reduce detention damages.

A fire destroyed the premises on August 6, 1963, while Mrs. Van Cure was still in possession. Cost of repair was stipulated at $20,792.91. Proof of loss was tendered September 30, 1963; and the claim was rejected by appellees on November 27, 1963.

An award was made by the viewers in the condemnation proceedings; and upon the Authority's appeal, a jury verdict of $70,200 was awarded on September 2, 1964. This was paid to appellant on May 27, 1965. The date of condemnation in that action was stipulated as

December 10, 1962. In the instant action the complaint was filed on March 17, 1964; the Authority was permitted to intervene March 18, 1965; the opinion was entered January 1, 1967; and final judgment was entered November 15, 1967. An appeal was taken to this Court in which appellant Van Cure contends, contrary to the finding of the Court of Common Pleas of Allegheny County, that she did have an insurable interest.

The requirement of an insurable interest is founded upon the public policy against wagering and goes back to *Pritchet v. Insurance Company of North America,* 3 Yeates 458 (1803), and to pre-revolutionary British Statutory law.[1] It was early held that the policyholder must have an interest that will be damaged before he will be permitted to recover for the loss against which he was insured. While there appear to be two major theories as to what constitutes an insurable interest, there is no clear cut statement in the cases as to which governs in Pennsylvania.

The first theory may be called the "legally enforceable interest" theory. This is an outgrowth of the statement made by Lord Eldon in an English case "that expectation, though founded on the highest probability, was not interest."[2] It was reasoned that a policy on an expectancy was in the nature of gambling. The proof that an interest was not an expectancy had to be of such a solid nature as to be enforceable in the courts of law or equity. Any other interest might merely exist at the whim of the grantor. In most instances this test has been based upon the possession of title only.[3] It is quite obvious, however, that the interests of lienors, bailees, lessees and innumerable other in-

---

[1] 19 Geo. 2, C. 37 passed in 1745.

[2] *Lucena v. Craufurd,* 2 B. & P. N.R. 269, 323, 127 Eng. Rep. 630, 651 (1806).

[3] 71 Dick. L. Rev. 622, 625 (1967).

terest holders also qualify under this definition, and it seems that this theory has found its way into Pennsylvania cases primarily by virtue of some misheadnoting and misciting.[4]

The second theory which enjoys greater support from text writers, is termed the "factual expectation" theory. It states that "anyone who has an expectation of economic benefit from the preservation of property or an expectation of loss from its destruction, regardless of his relation to the property, has an insurable interest."[5] This is a broad approach which covers not only all legal interests but other interests as well. It is more closely allied to the concept of indemnity for often a man with no legally enforceable interest may suffer more from the destruction of property than a man who holds title.

Although the outer reaches of this theory have not been examined,[6] it does find support in the language of Pennsylvania cases. For example, as early as *Farmers and Mechanics' National Ins. Co. v. Meckes,* 10 W.N.C. 306, 311 (1881), this Court said: "It is not necessary that the assured should have either a legal or equitable interest or indeed any property interest in the subject matter insured. It is enough if he holds such relation to the property, that its destruction by

---

[4] For instance, trace the statement "an 'insurable interest' has been defined as an interest which can be enforced at law or in equity" in *Kushner v. Springfield Fire and Marine Ins. Co.,* 112 P.L.J. 33 (1963), to the cases cited therein in reliance, *Pa. Fire Insurance Co. v. Dougherty,* 102 Pa. 568 (1883); *Kanefsky v. National Com. Mut. Fire Ins. Co.,* 154 Pa. Superior Ct. 171 (1944). However, there can be no question that this theory has some viability in Pennsylvania, especially in the condemnation area.

[5] Harnett and Thornton, Insurable Interest in Property: A Socio-economic Reevaluation of a Legal Concept, 48 Colum. L. Rev. 1162, at 1172-73 (1948).

[6] Op. cit. 48 Colum. L. Rev. 1162, 1172-73 (1948); 71 Dick. L. Rev. 622, 626 (1967).

the peril insured against involves pecuniary loss to him or those for whom he acts." In that case however there was a clear contract right in the insured who was a vendee of the destroyed property. Thus, even though the language would support adoption of the theory, the case involved an interest enforceable in the courts.

There have been several cases in Pennsylvania dealing with destruction of property after condemnation, yet the governing theory and the law remain in doubt. In *Heidisch v. Globe and Republic Ins. Co.*, 368 Pa. 602, 84 A. 2d 566 (1951), the condemnees had not yet been paid for their property when the destruction occurred. The County Code at that time, Act of May 2, 1929, P.L. 1278, §537, required payment prior to the vesting of title. Since the consent verdict had not been entered or judgment paid prior to the fire, condemnees retained title and hence had an insurable interest in the destroyed property. The emphasis on location of legal title in the opinion of Chief Justice DREW makes this a clear case of the application of the legally enforceable interest theory and those who in *Dursie* wished to hold otherwise were forced to find that either title had passed or that a theory that focused on title was inadequate.[7]

*Dursie v. American Union Ins. Co. of N.Y.*, 207 Pa. Superior Ct. 240, 218 A. 2d 87 (1966), was similar in its facts. The condemning resolution was passed and bond filed prior to the fire. The opinion of Judge WATKINS for three judges in support of affirming the lower court's decision in favor of the condemnee pointed to a conflict of authority as to passing of title on condemnation and then said "the decision as to whether legal title, equitable title or both passed at the time of the resolution or the filing of the bond is not neces-

[7] See *Dursie v. American Union Ins. Co. of N. Y.*, 207 Pa. Superior Ct. 240 at 244-45 (1966).

sary to the decision as to whether or not this plaintiff has an insurable interest in the property."[8] He further set out the definition of insurable interest in accordance with the factual expectation theory. However, when it came to the application of the theory, he discussed "certain property rights" and hence confused the theories. It is, however, evident that he wished to adopt the factual expectation theory.

The opinion for reversal by Judge MONTGOMERY dealt only with the location of title and held that the filing of bond passed title and the condemnee therefore had no insurable interest. The two opinions in this case, being the product of an evenly divided court, do not establish precedent.

In a similar factual situation, the United States District Court for the Western District of Pennsylvania, in *Western Pennsylvania National Bank v. American Insurance Company of Newark, New Jersey*, 282 F. Supp. 632 (1968), adopted the "factual expectation" test and held that an insurable interest existed despite its conclusion that title, legal and equitable, had passed. In doing so, it cited the same "interests" remaining in the condemnee which appellant presses upon us.

We find no insurable interest in appellant under either theory. There is little authority in recent case law to support appellant's contention under the "legally enforceable interest" theory that she possessed title at the time of fire. Our Court has held that title passes at the time of the condemning resolution for some purposes and, at the very latest, at the time of approval of bond for others. *Dacar Chemical Products Company v. Allegheny County Redevelopment Authority*, 425 Pa. 343, 228 A. 2d 778 (1967); *Braddock Borough v. Bartoletta*, 409 Pa. 281, 186 A. 2d 243 (1962),

---

[8] Id. at 245.

affirming per curiam on the opinion in 28 Pa. D. & C. 2d 529 (1961); *Lakewood Memorial Gardens, Inc. Appeal*, 381 Pa. 46, 112 A. 2d 135 (1955). Appellant did not have title any later than December 10, 1962.

Although this condemnation was not under the Eminent Domain Code of 1964, the County Code procedure was similar in all relevant aspects; and similar considerations apply. It has been said that the Eminent Domain Code contemplates the condemnee's interest to be in payment only and that once a bond is filed he is to look to the bond for security rather than to his property.[9] Therefore, appellant had no interest in the property after December 10, 1962.

As for any other legal interest in appellant, the only plausible argument made is that her right of possession was interrupted by the fire. However, this right was not enforceable since she remained at the will of the Authority who could have her removed at any time. The Authority allowed her to remain in possession only because it suited its financial interests by reducing detention damages, and no court could order the Authority to continue her possession. Consequently, appellant possessed no legally enforceable interest that could support the policies of insurance.

Under the factual expectation theory, appellant apparently adopts the items listed in *Dursie* which she feels are sufficient to create an insurable interest. The *Dursie* opinion for affirmance lists these "qualified" property rights existing after a taking has been effected: "(a) the owner had the right to compensation; (b) he had the right to petition for the appointment of viewers to determine compensation; (c) he had the right to appeal from the decision of the viewers, if

---

[9] *Seligsohn Appeal*, 410 Pa. 270, 189 A. 2d 746 (1963); *Braddock Borough v. Bartoletta*, supra; *Johnson v. Jackson*, 76 Dauph. 151 (1960).

dissatisfied with the award; (d) he had a right to appeal from a decision of a jury as to the amount of the compensation; (e) he had the right to damages for delay in payment from the date of the taking to the date of full payment; (f) the owner had the right to recover back the property if the condemnor abandons the project and the owner consents to take it back; (g) the condemnor had the right under the provisions of §2633 of the Second Class County Code, 16 PS §5633, to discontinue the condemnation proceedings; the owner had the right to constrain condemnation proceedings by injunction when the proceedings are improper and inequitable even after the filing of a bond: 13 P.L.E. page 404; and the condemnor had the right to correct a mistake in the description of the condemned premises after the filing of the bond." *Dursie,* supra, at 245-46. However, neither the *Dursie* affirming opinion nor the *Western Pennsylvania National Bank* opinion, which also approved these items, explain why these items support an insurable interest.

The first five "rights" are independent of the existence of the property. Condemnee has a right to compensation but this right is against the fund created by the approved bond and this right would exist unaltered even if the physical premises were completely destroyed. All of these rights relate to condemnee's right to payment, not to any right to the property itself. The rights listed might support a policy insuring against the possibility of the default of bond but not against any hazard to the property.

The remaining "interests" relate to the possibility of the return of the premises to appellant if the Authority should abandon the project or revoke the declaration of taking. Prior to enactment of the Eminent Domain Code of 1964, the condemnee had no reversionary right in the event of the abandonment of the project by the

condemnor. Thus, this appellant would not have the right to recover the property that she here claims.

Although the Code itself has given condemnee some rights in this respect, no different result follows. Upon abandonment of the project the condemnor has the right to dispose of the property as it sees fit unless it has not been improved and three years have not passed.[10] In such a case, the property must first be offered to the condemnee. At that time the condemnee will have an option to purchase the property. Until that situation arises, however, condemnee has a mere expectancy of an option to purchase. While we might hold that an option to purchase is a sufficient interest to sustain insurance, the mere expectancy thereof is insubstantial and incapable of qualifying as an insurable interest.

The possibility of revocation of condemnation arises under §5633 of the Second Class County Code and §408 of the Eminent Domain Code.[11] Appellant contends that since she may have her property returned to her, she has an interest in the preservation of that property. She errs in two respects. After a bond is filed, all risk of loss passes to the condemnor. If the Authority is to return the property it must make her whole with respect to any damages and losses. Thus, appellant could not sustain any pecuniary loss.

---

[10] Eminent Domain Code, 1964 Special Session, June 22, P.L. 84, Art. IV, §410, 26 P.S. §1-410 (pp.).

[11] Section 408 reads, inter alia: ". . . Where condemned property is relinquished, the condemnee shall be entitled to the damages sustained by him including costs, expenses and reasonable attorney's fees and such damages shall be assessed by the court, or the court may refer the matter to viewers to ascertain and assess the damages sustained by the condemnee." This section clarifies prior case law that surrounded §633 of the Second Class City Code (16 P..S §5633). The Commission comment however makes it clear that such right of revocation did exist and damages for intervening losses were recoverable.

Therefore, regardless of what theory of insurable interest is preferred, we conclude that appellant has presented no expectation of loss upon destruction of the condemned property which would support her recovery on these policies.

Judgment affirmed.

Mr. Justice EAGEN concurs in the result.

Mr. Justice MUSMANNO took no part in the consideration or decision of this case.

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

I concur in the result, but vigorously disagree with the "factual expectation theory." The majority Opinion impliedly approves the "factual expectation theory" which states that "anyone who has an expectation of economic benefit from the preservation of property or an expectation of loss from its destruction, regardless of his relation to the property, has an insurable interest." What about the many stores and businesses which lose their patronage and their business when a superhighway or turnpike is built a short distance away from there, or a nearby road is moved slightly away from them, or closed?

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I agree with the implication in the majority opinion that we should utilize the "factual expectation" theory to decide whether an insurable interest exists, but I dissent from the majority's application of that theory in this case.

I believe that the condemnee—appellant here—has exactly that kind of interest which the "factual expectation" theory covers. As the majority notes, the "factual expectation" theory "states that 'anyone who has an *expectation of economic benefit from the preservation* of property or an *expectation of loss from its destruction,* regardless of his relation to the property,

has an insurable interest.' This is a broad approach which . . . is more closely allied to the concept of indemnity for often a man with no legally enforceable interest may suffer more from the destruction of property than a man who holds title." (Emphasis added)

The Eminent Domain Code of 1964 gives a condemnee the kind of expectation and need for indemnity that should constitute an insurable interest. Under §408, Act of June 22, 1964 (Spec. Sess.), P.L. 6, §408, 26 P.S. §1-408 (Supp. 1969), "The condemnor, by filing a declaration of relinquishment in court within one year from the filing of the declaration of taking, and before having made the payment provided for in section 407(a) or (b), or as to which the condemnee has not tendered possession of the condemned property as provided in section 407, *may* relinquish all or any part of the property condemned that it has not taken actual possession of for use in the improvement, whereupon *title shall revest in the condemnee as of the date of the filing of the declaration of taking, and all mortgages and other liens existing as of such date shall be reinstated.*"[1] (Emphasis added)

Since on the date (which was within the one-year statutory relinquishment period) of the fire, the condemnor had neither paid the condemnee nor taken possession, it is clear that it was in a position to take advantage of the relinquishment provision of §408 or its nonstatutory equivalent if it so desired. At that point the condemnation sale was at most conditional,

---

[1] Although §408 became effective after the condemnation date here, it was intended to clarify existing law (see Commission Comment) which had indicated that relinquishment was permissible under certain circumstances, without detailing which ones. I must assume that in this case, where the condemnee retained possession and nothing had been paid, relinquishment would have been permitted, presumably under the terms of §408—with all encumbrances still attached.

and the condemnee in effect held a reversionary interest. The condemnor had absolute discretion to return the property to the condemnee, and the condemnee would get the property with *all encumbrances* that existed at the time of the filing of the declaration of taking. Under these circumstances, "the title of the Authority is defeasible; . . . Thus for one year *the risk of destruction by fire remained with the plaintiff*, and, I think, for this reason . . . it had an insurable interest in the building at the time of the fire." *Western Pennsylvania National Bank v. American Ins. Co. of Newark, N. J.*, 282 F. Supp. 632, 634 (1968) (Emphasis added)

The majority tries to avoid this problem by stating that if the condemnor returns the property to the condemnee, "it must make her whole with respect to any damages and losses." Section 408 does indeed provide that "the condemnee shall be entitled to the damages sustained by him, including costs, expenses and reasonable attorney's fees and such damages shall be assessed by the court, or the court may refer the matter to viewers. . . ." In my view, this provision would not cover the damages incurred here. The Commission Comment to §408 makes clear that the type of damages envisioned as collectible under this section are those resulting from the property being " 'tied up'; there may have been an entry by the condemnor, etc. . . . In Long v. Commonwealth, 37 D. & C. 702 [56 Montg. 112] (1940), the court allowed the condemnee expenses incurred for plans, photographs, real estate experts and attorney's fees. Expenses incurred for these items would, of course, be recoverable as damages under this section."

The damages allowed under §408 thus are those *resulting from* the fact that there was a condemnation and subsequent relinquishment. The fire loss in the case before us is not of that type. Indeed, it would

seem rather odd to me to require the condemnor to pay for fire damages for which it was in no way responsible and which occurred when *the condemnee was in possession.*[2]

Since I believe that under the facts of this case, §408 required the condemnee to bear a substantial risk of incurring a fire loss for one year, the condemnee had an insurable interest in the property at the time of the fire. I thus find it unnecessary to deal with the condemnee's other arguments, and I would reverse the judgment of the court below.

---

[2] The condemnor, which was not insured by appellees, of course, could not recover damages under the insurance policy. Thus, although they had accepted premiums from appellant, the insurance company-appellees would be obligated to reimburse *no one* for the fire damages. Under the majority's arbitrary result, the insured-condemnee is deprived of the very protection for which he had paid premiums under the insurance policy, and the insurance company is relieved of *any obligation* to pay for the loss which it had contracted and had been paid to bear. The majority's result is even more arbitrary in light of the undisputed record that neither the insured nor the Authority acted improperly in any regard, violated any aspect of law, or breached any provision of the insurance contract. Nothing in the record before us compels either as a matter of law or public policy the unfair and unexpected result reached by the majority.