359 Pa. Superior Ct. 606 (1986)
519 A.2d 951
SEALS, INC., Appellant,
v.
The TIOGA COUNTY GRANGE MUTUAL INSURANCE COMPANY, a/k/a Tioga Mutual Insurance Co.
Supreme Court of Pennsylvania.
Argued June 26, 1986.
Filed December 16, 1986.
Reargument Denied January 26, 1987.
*609 Robert A. Eckenrode, Williamsport, for appellant.
David Mills, York, for appellee.
Before WIEAND, BECK and WATKINS, JJ.
BECK, Judge:
This is an appeal from a judgment entered on a jury's verdict for appellee-insurer in an assumpsit action to recover under a policy of fire insurance. The appeal presents the following three questions:
1. In an action by an insured-corporation under a fire insurance policy where the insurer raises the affirmative defense of arson by the President and sole shareholder of the insured, is evidence of the suicide of the President and sole shareholder ten days after the fire admissible as circumstantial evidence of arson?
*610 2. In such an action, is evidence suggesting that ten days after the fire, the President and sole shareholder of the insured murdered his girlfriend, on whom he depended to provide his sole alibi as to his whereabouts at the time of the fire, admissible as circumstantial evidence of arson?
3. In such an action, should the trial court have granted a compulsory nonsuit at the close of the insured's evidence as to that portion of the insured's claim relating to the inventory destroyed in the fire on the ground that the insured had no insurable interest in the inventory, where the insured did not have any legal or equitable title to the inventory but depended on the proceeds from the sale of the inventory for payment of franchise fees and rent from the inventory owners and submitted evidence to show that it was co-obligated with the owners on a Note (or the obligation underlying the Note) which the owners repaid from the proceeds of inventory sales?
As to the first two of these issues, our standard or review is quite limited. A ruling on evidence will constitute reversible error only if the complaining party shows that the ruling was both erroneous and harmful to him. Bessemer Stores v. Reed Shaw Stenhouse, 344 Pa.Super. 218, 224, 496 A.2d 762, 765 (1985); Anderson v. Hughes, 417 Pa. 87, 92, 208 A.2d 789, 791 (1965). Only if both error and prejudice are shown can we conclude that the trial court's admission of the evidence was an abuse of discretion. Bessemer, supra; Lewis v. Mellor, 259 Pa.Super. 509, 515, 393 A.2d 941, 944 (1978). On such a finding that improperly admitted evidence may have affected the verdict, the correct remedy is the grant of a new trial. Bessemer, supra; Mapp v. Dube, 330 Pa.Super. 284, 292, 479 A.2d 553, 555 (1984). See also Walasavage v. Marinelli, 334 Pa.Super. 396, 409-411, 483 A.2d 509, 516 (1984).
In contrast, in reviewing the trial court's grant of a compulsory nonsuit, our inquiry is whether the plaintiff's evidence was sufficient to present a question for the jury on which a verdict for the plaintiff could have been based. Commonwealth Trust Co. v. Carnegie-Illinois Steel Co., *611 353 Pa. 150, 44 A.2d 594 (1945). Our review is based on the evidence of record at the time the nonsuit was entered. Francioni v. Gibsonia Truck Corp., 472 Pa. 362, 372 A.2d 736 (1977). In reviewing that evidence, we must give the plaintiff the benefit of every fact and reasonable inference arising from the evidence, resolve all conflicts in the testimony in plaintiff's favor and affirm the entry of the nonsuit only where that review leads ineluctably to the conclusion that the defendant is not liable. Woelfel v. Murphy Ford Co., 337 Pa.Super. 433, 487 A.2d 23 (1985); Agriss v. Roadway Express, Inc., 334 Pa.Super. 295, 483 A.2d 456 (1984).
Having reviewed the record and arguments of the parties in accordance with these standards, we conclude that in this case the trial court did abuse its discretion in admitting evidence of suicide and possible murder because of the low probative value coupled with the highly prejudicial character of such evidence. We, therefore, reverse the trial court's refusal of a new trial. Moreover, we also reverse the trial court's entry of a nonsuit on appellant's claim for the value of the destroyed inventory. On retrial, the question of the appellant's insurable interest should be submitted to the jury with appropriate instructions in accordance with this opinion.

I. Factual Background.

This case arose from a fire that occurred on November 21, 1982. The fire totally destroyed a retail hardware store located in Westfield, Pennsylvania. Appellant-insured, Seals, Inc. ("Seals") owned the Westfield store building. George Plank, deceased, was at all time pertinent to this matter the President and sole shareholder of Seals. Seals was the franchisor of the business conducted at the store. The franchisees, Russell and Eileen Outman, owned the store inventory. They paid their rental and franchise fees to Seals primarily out of the proceeds of the sale of the inventory. (R. 23a). The Outmans had purchased the inventory out of the proceeds of a loan from Citizens and *612 Northern Bank of Wellsboro, Pennsylvania (the "Bank"), which was evidenced by a promissory note. Both Russell and Eileen Outman signed their names to the Note as obligors. Following their names on the Note appear the signature of George Plank and the hand-printed name of Seals. Both appear on additional obligor signature lines.
Seals insured both the store building and the inventory therein against fire loss with appellee-insurer, The Tioga County Grange Mutual Fire Insurance Co., a/k/a Tioga Mutual Insurance Company ("Tioga"). Tioga declined coverage of Seals' claim under the policy primarily because it contended that the fire was arson and George Plank was the arsonist. Tioga also contended that in any event no payment was due as to the destroyed inventory because Seals had no insurable interest therein.
On September 29, 1983, Seals instituted an action against Tioga in the Tioga Court of Common Pleas. Seals sought payment of the proceeds of the fire policy. A jury trial commenced on January 22, 1985 and ended with a verdict for Tioga on January 25, 1985. On the second day of trial, the trial court entered a compulsory nonsuit against Seals as to its claim for the value of the destroyed inventory, finding as a matter of law that Seals had no insurable interest therein. In accordance with Rule 227.1(c), Seals filed a post-trial motion seeking removal of the nonsuit within ten days after its entry. Pa.R.C.P. No. 227.1(c).
During the trial, Tioga supported its arson defense by introducing evidence of the fact that approximately ten days after the fire, George Plank committed suicide. The trial court allowed the evidence over the objection of Seals' counsel. Tioga also sought to introduce evidence that immediately prior to his own death, Plank had shot and killed his girl friend, Ms. Mann. Seals' counsel's objection to this evidence was overruled. Faced with the trial court's ruling, Seals' counsel agreed that in lieu of Tioga's submitting testimony as to the murder theory, the following stipulation would be read to the jury:

*613 Detective Daniel O'Brien of the office of the Sheriff of Chemung County, New York is here in Court and is prepared to testify. He would testify that he conducted an investigation concerning the death of Martha Mann and George Plank, Jr., which deaths occurred December 1, 1982. He will testify that as a result of his investigation, he came to the following conclusions. (1) Miss Mann died as a result of a gunshot wound from a 30/30 rifle, and later, the same day, George Plank committed suicide by the use of the same 30/30 rifle.
(R. 88a). Counsel for Seals specifically preserved his exception to the admission of any testimony about Plank's suicide or the murder theory despite the stipulation. (R. 87a).
On February 1, 1985, Seals filed a Motion for a New Trial raising the issues set forth above. On October 23, 1985, the trial court denied Seals' motion and this timely appeal followed.
We shall consider the three issues Seals raises seriatim.

II. Evidentiary Issues.

Arson by an insured under a policy of fire insurance is an affirmative defense to the insurer's obligations under the policy. As such, the burden is on the insurer to prove by a fair preponderance of the evidence that the fire was caused by arson. Sperrazza v. Cambridge Mutual Fire Insur. Co., 313 Pa.Super. 60, 459 A.2d 409 (1983); Greenberg v. Aetna Insurance Company, 427 Pa. 494, 235 A.2d 582 (1962). In this case, Tioga sought to sustain this burden by offering evidence from which it hoped that the jury would infer that Plank had killed himself and Ms. Mann because he was aware that he was going to be prosecuted for the burning of the Westfield store. Tioga sought to lead the jury to conclude that Plank's suicide resulted from fear and guilty conscience. Further, Tioga wanted the jury to infer that Plank had killed Ms. Mann because his alibi for the night of the fire was that he was with Ms. Mann at his home in New York. Tioga hoped that the jury would believe that Plank was lying about his *614 whereabouts that night and since he feared Ms. Mann would not support his alibi, he killed her. Thus, Tioga sought to prove arson by this and other circumstantial evidence.
At the outset, we should note that it is perfectly proper for circumstantial evidence to support a jury's finding of arson by an insured. The District Court for the Eastern District of Pennsylvania has correctly described the evidence to be considered by a jury in such cases:
[I]n a civil matter to determine whether a reasonable inference exists that an insured is responsible for the fire which damaged the insured property, a jury should consider the combination of evidence of: (1) an incendiary fire; (2) a motive by the insured to destroy the property and (3) circumstantial evidence connecting the insured to the fire.
Mele v. All-Star Insurance Company, 453 F.Supp. 1338, 1341 (E.D.Pa. 1978).
Obviously, Tioga sought to introduce the evidence of suicide and murder as circumstantial evidence connecting Plank to the fire. To the contrary, Seals argues that the probative value of this circumstantial evidence in connecting Plank to the fire is very low and is far outweighed by its prejudicial nature. We agree.
Evidence is relevant only when it tends to establish facts in issue or in some degree advance the inquiry. Whistler Sportswear v. Rullo, 289 Pa.Super. 230, 433 A.2d 40 (1981). However, even evidence that is relevant must be excluded when it would confuse, mislead or prejudice the jury. To be prejudicial, evidence must have an "undue tendency to suggest decision on an improper basis." Id., 289 Pa.Superior Ct. at 243, 433 A.2d at 47.
The evidence of Plank's suicide is only relevant to the arson defense if in fact Plank killed himself because he had set the fire. Our examination of the record in this case leads us to conclude that Tioga failed to lay an adequate foundation by way of expert or other testimony as to the *615 reasons for Plank's suicide. Tioga submitted evidence that Plank was "nervous" when discussing the fire. It also showed that Plank had discussed the fire with some investigators who were investigating the fire and that they had asked Plank about his whereabouts the night of the fire and told him they thought the fire might have been arson. This alone does not at all demonstrate that Plank took his life because he feared prosecution for arson.
For a jury to infer that Plank had set the fire merely because over a week later he committed suicide, they would have to engage in precisely that pure "speculation" which this court has previously forbidden. Sperrazza, supra. The evidence must support a reasonable and legitimate inference of arson by the insured. The inference must not rest on speculation but rather on logical deduction from proven facts. Id., 313 Pa.Superior Ct. at 62, 459 A.2d at 410.
We find unpersuasive Tioga's citation to criminal cases in which evidence of attempted suicide by an accused has been admitted to show guilty conscience and, therefore, guilt. See Commonwealth v. Giacobbe, 341 Pa. 187, 19 A.2d 71 (1941); Commonwealth v. Homeyer, 373 Pa. 150, 94 A.2d 743 (1953). In both Giacobbe and Homeyer, the connection between the guilt of the defendant and the attempted suicide was clear.
In Giacobbe, the defendant was convicted of murdering her husband. She attempted suicide immediately after she was interrogated by the police for the first time six years after the murder. In reviewing the circumstantial evidence of her guilt, the court referred to the suicide attempts as ". . . her suicidal attempts six years later when discovery occurred and prosecution was imminent." 341 Pa. at 191-93, 19 A.2d at 73-74. Similarly, in Homeyer, the suicide attempt by the defendant occurred after he had been arrested and while he was being transported by detectives to Pennsylvania for prosecution. 373 Pa. at 155, 94 A.2d at 745.
*616 In contrast, in this case Plank was never even interrogated by the police concerning his involvement with the fire and there was no evidence that he had any inkling that he was under suspicion for arson.
Even assuming that the evidence of Plank's suicide was at all probative of his guilt, we deem its admission to have been prejudicial. To commit suicide is in the minds of many a reprehensible, even immoral and sinful act. At minimum, it is the violent act of a severely troubled person. To this jury, evidence of such violence and mental instability, or even immorality, might have been enough to support in the jurors' minds an inference of arson. Since they may have decided on this clearly improper basis, a new trial without the suicide evidence is required. Whistler, supra; Bessemer, supra.
We reach the same conclusion with regard to the admission of evidence suggesting that Plank killed Ms. Mann. The probative value of this evidence to establish a connection between Plank and the fire is even lower and more attenuated than that of the suicide evidence. Tioga cites us to no precedent to support the admissibility of evidence that asks a jury to speculate that a murder and, therefore, an arson occurred, and we have found none. In fact, Tioga merely argues that we should affirm the admission of the stipulation regarding Ms. Mann's death because it did not specifically say that Plank killed her and, thus, did not prejudice Seals by telling the jury that Plank was a murderer. In so arguing, Tioga has placed itself in an indefensible position.
If, on the one hand, we evaluate the admissibility of the stipulation without reference to the obvious inference of murder the jury may have drawn therefrom, as Tioga would apparently have us do, then the stipulation sets before the jury only two facts: first, that Plank committed suicide and second, that Ms. Mann died earlier the same day from a gunshot from the same rifle. We have already stated that the suicide evidence should be excluded. And, if we exclude consideration of an inference of murder, the mere evidence that Ms. Mann died on the same day and by the same *617 weapon as Plank is totally irrelevant to Tioga's arson defense. It is thus inadmissible.
If, on the other hand, we evaluate the admissibility of the stipulation with regard to the inference a jury might draw therefrom, as indeed we must, the result is the same. The evidence of Ms. Mann's death is equally inadmissible because the inferences of murder and arson from the manner of her death are purely speculative and the evidence is also prejudicial.
Tioga laid no foundation for the evidence of Ms. Mann's death outside of the evidence summarized above regarding the foundation supposedly laid for the suicide evidence. This, coupled with the fact that Plank did contend he was with Ms. Mann in New York the night of the fire, is Tioga's total basis for arguing that the jury could reasonably conclude that Plank had killed Ms. Mann because he was afraid she would refuse to support his alibi and, therefore, that Plank must have set the fire. The circuitous and speculative nature of this argument is obvious. First, Tioga asks that the jury be permitted to speculate that Plank indeed killed Ms. Mann. Then, Tioga asks that the jury be asked to further speculate as to the reason for the alleged murder and conclude that Plank set the fire. The foundation of a jury's verdict cannot rest on layer upon layer of speculation. The manner of Ms. Mann's death is not relevant to the arson issue and must be excluded on retrial of this action.[1]

III. Insurable Interest.

Because we decide that a new trial must be had, we must now consider whether at that trial, the issue of Seals' *618 insurable interest should be submitted to the jury. We decide that it should.
An insured must demonstrate an insurable interest in property destroyed by fire before it can recover for the loss under a fire insurance policy. Christ Gospel Temple v. Liberty Mutual Insurance Co., 273 Pa.Super. 302, 308, 417 A.2d 660, 663, cert. denied, 449 U.S. 955, 101 S.Ct. 362, 66 L.Ed.2d 220 (1979). The question of whether an insured had an insurable interest in the property is clearly one of fact for the jury to decide. Bessemer, supra; Campbell v. Royal Indemnity Co. of New York, 256 Pa.Super. 312, 315, 389 A.2d 1139, 1141 (1978).
Seals attempted to demonstrate its insurable interest in the inventory of the Westfield store in two ways. First, it offered evidence to show that the rent and franchise fees the owners of the inventory paid to Seals were funded by the proceeds of inventory sales. Second, it offered evidence to show that Seals was a co-obligor with the inventory owners on a Note for $60,000, that repayment of the Note was primarily the obligation of the inventory owners, that such repayment was funded through the proceeds of inventory sales and that if the owners defaulted, Seals would be responsible for the payments as guarantor.
Tioga counters by arguing that under the law of Pennsylvania, an insurable interest must consist in either legal or equitable title to the property. Seals admittedly has neither. Further, Tioga disputes Seals' status as a co-obligor or guarantor on the Note and thus contends that Seals' alleged potential obligation to the Bank in the event of a default by the Outmans does not exist.
We disagree with Tioga's definition of the legal standard applicable to a finding of an insurable interest under Pennsylvania law. Although there is admittedly not a wealth of Pennsylvania precedent on this issue in the context of fire insurance policies, the leading Pennsylvania Supreme Court case on the issue and those following it make the resolution of this question clear.
*619 In Van Cure v. Hartford Fire Insurance Co., 435 Pa. 163, 253 A.2d 663 (1969), a plurality of the court outlined the two competing definitions of insurable interest. The first, called the "legally enforceable interest theory", would require an insured to prove that it had an interest in the destroyed property sufficiently solid as to be enforceable in court. In other words, actual legal or equitable title or an interest very close thereto, like a lien on the property, had to be shown. Id., 435 Pa. at 166, 253 A.2d at 664. The other theory was described by the Van Cure court as follows:
The second theory which enjoys greater support from text writers, is termed the `factual expectation' theory. It states that `anyone who has an expectation of economic benefit from the preservation of property or an expectation of loss from its destruction, regardless of his relation to the property, has an insurable interest.' This is a broad approach which covers not only all legal interests but other interests as well. It is more closely allied to the concept of indemnity for often a man with no legally enforceable interest may suffer more from the destruction of property than a man who holds title.
Id., 435 Pa. at 167, 253 A.2d at 665 (footnotes omitted).
Tioga correctly points out that the Van Cure opinion itself is not only a mere plurality and, therefore, not binding precedent, but that in Van Cure the actual holding was that the insured in that case did not have an insurable interest under any theory. We must, however, add that in Van Cure, although Justice Roberts dissented from the majority holding, his dissenting opinion expressly states that he too found the factual expectation theory to be the preferable standard. Id., 435 Pa. at 173, 253 A.2d at 668 (Roberts, J., dissenting). Thus, at least four of the six members of the Van Cure court approved the factual expectation theory. Pennsylvania and federal cases decided after Van Cure have also been decided on the apparent assumption that the factual expectation theory is the correct measure of an insurable interest under Pennsylvania *620 law. See, e.g., Kellner v. Aetna Insurance Co., 605 F.Supp. 331 (M.D.Pa. 1984); Caputo v. Blackstone Mutual Insurance Co., 323 F.Supp. 1252 (W.D.Pa. 1971); Luchansky v. The Farmers Fire Insurance Co., 357 Pa.Super. 136, 515 A.2d 598 (1986).
Therefore, we conclude that we must apply the factual expectation theory in assessing whether a compulsory nonsuit should have been entered in this case. Applying this theory, Seals clearly offered evidence that might lead a jury reasonably to conclude that it had a reasonable expectation of benefit from the preservation of the inventory or, at minimum, that it might suffer pecuniary loss if the inventory were to be destroyed. The rent and franchise fees the Outmans paid to Seals came from the proceeds of inventory sales and were calculated as a percentage thereof. (R. 46a, 49a). Obviously, a jury could reasonably conclude that Seals stood to lose those payments if their source was destroyed.
Moreover, Seals offered evidence of Seals' co-obligation with the Outmans on the Note. Once again, Seals submitted testimony to show that the parties to the actual loan transaction understood that Seals was a co-obligor on the Note. The proceeds of the Note were used by the Outmans to purchase the inventory and the proceeds of the sale thereof funded repayment of the loan. (R. 16a-19a, 44a-45a). If Seals is a co-obligor on the Note or the obligation underlying the Note, it stood to lose if the Outmans defaulted.
Tioga contends that since the face of the Note does not reflect that Plank signed it in a representative capacity on behalf of Seals, i.e. as an authorized agent of the corporation, Seals is not obligated on the Note. In other words, Tioga contends that Plank's signature of his own name and printing of the name of Seals on obligor signature lines on the Note does not suffice to bind Seals as a co-obligor. This argument ignores several points pertinent to whether Seals' involvement in this loan transaction contributes to its insurable interest in the inventory.
*621 First, there has been a clear suggestion in at least two Pennsylvania cases that the mere printing of a corporation's name on an instrument may suffice as the "signature" of the corporation and, therefore, render the corporation liable on the instrument. See Pollin v. Mindy Mfg. Co., Inc., 211 Pa.Super. 87, 236 A.2d 542 (1967) (dicta) (allocatur denied); Jacoby Transport Systems, Inc. v. Continental Bank, 227 Pa.Super. 440, 419 A.2d 1227 (1980). This suggestion has been based on the language of Section 3401(b) of the Pennsylvania Uniform Commercial Code (the "Code"), which states that "[a] signature is made by use of any name, including any trade or assumed name, upon an instrument, or by any word or mark used in lieu of a written signature." 13 Pa.Cons.Stat.Ann. § 3401(b) (1982). Section 3401(a) states that only a person who has signed an instrument shall be liable thereon. Id. § 3401(a). Both sections must, of course, be read in conjunction with the general definitional provisions of the Code, which define "signed" to include "any symbol executed or adopted by a party with present intention to authenticate a writing." Id. § 1-201(39).
In this case, there was no evidence to suggest either that Plank lacked authority to bind Seals to the Note by affixing its "signature" thereon or that any party to the loan transaction understood that Seals was not to be liable on the Note. The testimony suggests that both Plank personally and Seals were to be liable and there is nothing on the face of the Note that contradicts this conclusion.
Furthermore, Tioga ignores the fact that the Comment to Section 3401(a) of the Code, relating to who is liable on an instrument, makes clear that the Code's restriction of persons liable to those who sign does not prevent liability from arising outside of the instrument itself, based on the obligation underlying the Note, or for "breach of any agreement to sign, or in tort for misrepresentation, or even on an oral guaranty of payment where the statute of frauds is satisfied." Id. § 3401(a) Comment. Thus, for purposes of determining whether Seals could suffer pecuniary loss from *622 the destruction of the inventory by becoming obligated to repay the Bank, Seals' obligation on the Note itself is not the sole inquiry. And the testimony adduced by Seals at trial raised at least a material factual question as to the intentions of the parties to this loan transaction.
Given the foregoing, we are of the opinion that Seals clearly presented sufficient evidence supporting the existence of an insurable interest in the inventory to warrant submission of the issue to the jury. At minimum Seals expected continued benefit from the preservation of the property in the form of fees and rents. Such an expectation of benefit from the destroyed property deriving from an expectation that proceeds from the property will be used to satisfy an obligation to the insured has previously been held sufficient to evidence an insurable interest. For example, in Aetna Insurance Co. v. King, 265 So.2d 716 (Fla.Dist.Ct. App. 1972), the court held that the insured had an insurable interest in property owned by another where the owner had agreed to employ the proceeds from the lease of the property for the support of the insured. In addition, in one early case strikingly similar to this one, the court held that where a firm of merchants provided inventory to a dealer and depended on his sale of those goods to fund payment for the inventory, the lending firm had an insurable interest in the inventory. A. Roos & Co. v. Merchants' Mutual Insurance Co., 27 La.Ann. 409 (1875). In a much more recent case also involving similar facts, a Florida appellate court held that the insured had an insurable interest in the insured building where the insured had personally guaranteed a Small Business Administration loan to the corporate owner of the insured building. Cincinnati Insurance Co. v. Palmer, 297 So.2d 96 (Fla.Dist.Ct.App. 1974). The court so held despite the fact that the insured did not have a lien on the insured building to secure its guaranty agreement.
These precedents make it clear that where the factual expectation theory of insurable interest is to be applied and the insured produces evidence such as that produced by *623 Seals, a material question of fact for the jury to resolve has been raised. The entry of the nonsuit was error.
Reversed and remanded for a new trial to be conducted in accordance with this opinion. Jurisdiction is relinquished.
NOTES
[1] Even if we found the murder theory evidence to be in any measure probative of arson, we would be compelled to decide that the evidence is prejudicial and, therefore, inadmissible on that ground. The inherently prejudicial nature of evidence of other crimes committed by a person accused of a crime has been repeatedly recognized by our courts and the admission of such evidence is consequently severely limited. See Commonwealth v. Fortune, 464 Pa. 367, 346 A.2d 783 (1975). In this case, any minimal probative value the subject evidence might have is clearly outweighed by its prejudicial nature.