**ATLANTIC MUTUAL INSURANCE COMPANY, Appellant**

v.

**Kathleen GULA and Paul Gula, h/w, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 30, 2007.
Filed May 17, 2007.
Reargument Denied July 19, 2007.

Teresa F. Sachs, Philadelphia, for appellant.

Charles G. Milner, Philadelphia, for appellees.

BEFORE: JOYCE, KLEIN, JJ. and McEWEN, P.J.E.

OPINION BY KLEIN, J.:

¶ 1 This matter came to the trial court as a result of dueling motions for summary judgment in a declaratory judgment action concerning insurance coverage. Plaintiff Kathleen Gula suffered a work injury, and alleged the injury was compounded because the workers' compensation case manager assigned by the employer's carrier, Novaeon, delayed authorization of surgery. Novaeon went into bankruptcy and dissolved, but Atlantic Mutual Insurance Company had issued a general liability policy for Novaeon that survived the bankruptcy. The trial court ruled in favor of Gula and against Atlantic Mutual on both summary judgment motions. We believe that both rulings were in error, and reverse and remand for entry of judgment in favor of Atlantic Mutual, signifying it had no duty to defend or indemnify Novaeon.

¶ 2 The pertinent language of the policy is the following:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

Policy, ¶ 1, p. 208.

¶ 3 The policy also says that the insurance "... applies to 'bodily injury' ... only if: (1) the 'bodily injury' ... is caused by an 'occurrence' that takes place in the 'coverage territory.' " *Id.* at ¶ 1(b)(1). An

"occurrence" is defined as "an accident including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at ¶ 10, p. 216. Moreover, there is an exclusion for " 'bodily injury' ... arising out of the rendering or failure to render professional services." *Id.* at ¶ 2(j), p. 210.

¶ 4 We believe there are two reasons that there is no coverage.

1. Under the recent Pennsylvania Supreme Court case of *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union*, 589 Pa. 317, 908 A.2d 888 (2006), failure to authorize medical care is not an "occurrence" which would be covered by the policy. That is all that is pled in the complaint.

2. Novaeon, as a workers' compensation risk manager, employs physicians and uses skill to determine what medical care is appropriate for treatment for a work accident. That is its profession. One does not have to be a doctor or lawyer to render professional services. The exclusion for failing to render proper professional services is specifically excluded from the policy. General liability coverage would include someone slipping and falling in Novaeon's offices but not the job that they get paid for doing.

**Occurrence**

¶ 5 As noted above, the insurance policy provides coverage for a bodily injury caused by an occurrence. An insurer's obligation to defend is fixed solely by the allegations in the underlying complaint. *See Erie Ins. Exchange v. Muff*, 851 A.2d 919 (Pa.Super.2004). Here, the complaint reveals that Gula suffered an injury while in the course and scope of her employment as an X-ray technician at Taylor Hospital. The injury was a left peroneal nerve entrapment that included left great toe numbness and foot drop. Plaintiff's Com-

plaint, 1/30/01, ¶¶ 3–5. Her family physician related her problems to her work related accident. *Id.* at ¶ 6. Gula sought care from Park Care Health Organization. *Id.* at ¶¶ 6–7. She also received care from an orthopaedist, whose affiliation is not noted in the complaint. *Id.* at ¶¶ 8–9. On March 28, 1999, she was referred to Novaeon (the insured under the policy at issue) to obtain certification to obtain an EMG diagnostic procedure, which certification was obtained on March 30. *Id.* at ¶¶ 10–11. The EMG diagnostic test was performed on April 1, 1999. *Id.* at ¶ 11.

¶ 6 At some point, presumably after April 1, Gula treated with a neurologist, Dr. Brian Grossinger, who diagnosed the left peroneal nerve entrapment and who recommended (allegedly erroneously) against surgery. *Id.* at ¶ 12. On April 8, Gula returned to work on full duty status, wearing a leg brace. *Id.* at ¶ 13. At some later point in time, Gula sought treatment from another neurologist, Dr. Vidyar Chitale, who ultimately performed the peroneal nerve release on May 24, 1999. *Id.* at ¶ 14. There is no indication in the complaint who referred Gula to Dr. Grossinger or Dr. Grossinger's affiliation with Novaeon. Similarly, there is no indication of Dr. Chitale's affiliation.

¶ 7 In Count I of her complaint, Gula avers that Novaeon is the health care management administrator or vendor to or for Gula's employer and through which she must obtain approval to seek medical care and treatment. *Id.* at ¶ 25. She then alleges that Novaeon failed to establish and implement reasonable processes and procedures for Gula to get adequate, timely and proper health care for her injury. *Id.* at ¶ 26.

¶ 8 The above listed information is the basis by which we must determine whether Gula suffered an injury by an occurrence. The policy defines an occurrence as an accident. Our Supreme Court has recently provided guidance for the interpretation of an accident/occurrence in *Kvaerner, supra.*

> The National Union CGL [1] policies do not provide a definition for "accident." Words of Common usage in an insurance policy are construed according to their natural, plain, and ordinary sense. We may consult the dictionary definition of a word to determine its ordinary usage. Webster's II New College Dictionary 6 (2001) defines "accident" as "[a]n unexpected and undesirable event," or "something that occurs unexpectedly or unintentionally." The key term in the ordinary definition of "accident" is "unexpected." This implies a degree of fortuity that is not present in a claim for faulty workmanship.

*Id.* at 897–98.

¶ 9 It also stated:

> While the majority of Courts have held that coverage under a CGL policy is not triggered by poor workmanship which causes injury to the work product itself, a minority of jurisdictions have held that faulty or negligent workmanship constitutes an accident so long as the insured did not intend for the damage to occur. We believe that this is an overly broad interpretation of accident, as the situation is rare indeed in which a contractor intends that the work product suffer injury. Because we believe that CGL policies are not the proper means to protect against such risks, we concur with the majority of Courts and decline to apply coverage in such cases.

*Id.* at 899, n. 9.

¶ 10 Finally:

---

1. Commercial General Liability. The Atlantic Mutual policy at issue is also a CGL.

We hold that the definition of "accident" required to establish an "occurrence" under the policies cannot be satisfied by claims based upon faulty workmanship. Such claims simply do not present the degree of fortuity contemplated by the ordinary definition of "accident" or its common judicial construction in this context. To hold otherwise would be to convert a policy for insurance into a performance bond. We are unwilling to do so, especially since such protections are already readily available for the protection of contractors.

*Id.* at 899.

¶ 11 According to the complaint, the only action specifically linked to Novaeon was the certification for physical therapy and permission to obtain an EMG diagnostic test. *See* Complaint, ¶ 10. Novaeon did exactly what it was asked to do, and did so within one day. This certainly does not represent an accident. However, reading the complaint broadly, we might presume that Gula was referred to Dr. Grossinger by Novaeon, and Dr. Grossinger erred in advising against surgery to release the peroneal nerve. Once again, however, this does not represent the type of fortuity contemplated by the term "accident" as defined by our Supreme Court in *Kvaerner*. Even if we assume that Dr. Grossinger was negligent in offering his opinion, that does not represent an accident to be covered by a CGL; rather, it would be professional negligence. Similarly, if Novaeon in some manner knew or should have known that Dr. Grossinger was negligent in his diagnosis, and should have presented Gula with an alternative treatment option, this too represents a faulty medical decision, not something that is meant to be covered by a general liability policy.

¶ 12 Looking at the four corners of the complaint, there is nothing that can be considered an "accident" that would trigger coverage.

**Professional Services**

■ ¶ 13 The policy specifically excludes " "Bodily injury" or "property damage" arising out of the rending or failure to render professional services." *See* Policy, ¶ 2(j), p. 210. The record reveals that Novaeon provided a professional service of case managing heath care; that is, coordinating patient and health care options, ostensibly to provide each patient with optimal health care treatment in a cost effective manner. This necessarily implicates a level of training, a weighing of factors and use of judgment that is the hallmark of a professional service.[2] It is not simply an administrative functionary that stamps paperwork and processes payments.

¶ 14 Once again, viewing the factual averments and allegations in the complaint, we can only discern that Novaeon was being accused of somehow providing Gula with a substandard level of professional service. The complaint is vague as to what that might be, but comparing the allegation found in Count I with the factual averments which must be the basis for the allegation, Novaeon either delayed approval of the EMG or did not properly supervise or review the medical decision of Dr. Grossinger. Both of these represent the essence of the professional service provided by Novaeon. As such, the policy specifically excludes the claim from coverage.

¶ 15 If we analogize this situation to *Kvaerner*, admittedly a rough analogy, then we realize that our Supreme Court refused to extend CGL coverage to the point where it became a performance

---

**2.** Whether Novaeon provided that service in a proper manner is not at issue. What is at issue is whether the actions taken or not taken by Novaeon were professional services.

bond. The CGL is not meant to insure the actual quality of the thing provided; in the construction business there are other ways to provide for that, notably a performance bond. Here, the CGL is not meant to be converted into professional negligence insurance. The CGL policy is not designed to insure the quality of the case management service provided. The record demonstrates that there is specific insurance that does cover the possibility of negligent provision of case management. Novaeon had such coverage from St. Paul Fire and Marine. Unfortunately, that coverage was not purchased for the time frame applicable to this claim. The fact that Novaeon did not have the proper coverage in place for this claim does not mean that any other policy that covered Novaeon must provide coverage for professional negligence. The person who suffers a loss due to a house fire cannot convert his automobile insurance into a homeowners policy to pay for the repairs to his home. The Commercial Union CGL policy in *Kvaerner* could not be converted into a performance bond insuring the quality of the work performed by the contractor. Similarly, the CGL policy covering Novaeon cannot be converted into a professional services policy.

¶ 16 Because Gula has failed to demonstrate two separate prerequisites necessary for coverage, we find that the Atlantic Mutual CGL policy is not applicable to the claim and, therefore, Atlantic Mutual has no duty to defend or indemnify in this matter. First, Gula has failed to show that her injury was the result of an "occurrence." Second, the allegations in her complaint also demonstrate that her claim necessarily arises from the professional services rendered by Novaeon. The Atlantic Mutual CGL policy specifically excludes such claims from coverage. As a result, Atlantic Mutual is entitled to summary judgment in its favor.

¶ 17 Order vacated. This matter is remanded to the trial court for entry of judgment in favor of Atlantic Mutual. Jurisdiction relinquished.