J-A12018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DEBRA M. CAMPAYNO AND JILLIAN M. CAMPAYNO | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AUTO-OWNERS INSURANCE, AND BAILEY INSURANCE COMPANY, INCORPORATED, WILLIAM E. HORNICK, AND BETTY L. HORNICK, HUSBAND AND WIFE, AND RACHEL KNAPIC, AND FOOTSIE BATH, LLC. | : | No. 1210 WDA 2016 |
| | : | |
| | : | |
| APPEAL OF: AUTO-OWNERS INSURANCE | : | |

Appeal from the Order Dated June 28, 2016
In the Court of Common Pleas of Westmoreland County
Civil Division at No(s): 6743 of 2013

| | | |
|---|---|---|
| DEBRA M. CAMPAYNO AND JILLIAN M. CAMPAYNO | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AUTO-OWNERS INSURANCE, AND BAILEY INSURANCE COMPANY, INCORPORATED, WILLIAM E. HORNICK, BETTY L. HORNICK, HUSBAND AND WIFE, RACHEL KNAPIC, FOOTSIE BATH, LLC. | : | No. 1255 WDA 2016 |
| | : | |
| | : | |
| APPEAL OF: DEBRA M. CAMPAYNO AND JILLIAN M. CAMPAYNO, BAILEY INSURANCE COMPANY, INCORPORATED, WILLIAM E. HORNICK AND BETTY L. HORNICK, RACHEL KNAPIC, FOOTSIE BATH, | : | |

LLC

Appeal from the Order Dated June 28, 2016
In the Court of Common Pleas of Westmoreland County
Civil Division at No(s): 6743 of 2013

BEFORE:   OLSON, J., SOLANO, J., and RANSOM, J.

MEMORANDUM BY RANSOM, J.:                    **FILED AUGUST 23, 2017**

Debra M. Campayno and Jillian M. Campayno (collectively "Insureds") appeal from the order entered June 28, 2016, granting Auto-Owners Insurance ("Insurer") declaratory relief and holding that Insurer had no duty to defend or indemnify Insureds in the underlying negligence action filed by William Hornick.  After careful review, we affirm.[1]

The relevant facts and procedural history are as follows.  In May 2010, Jillian Campayno registered the fictitious entity La Spa Ligonier ("La Spa") with the Commonwealth of Pennsylvania, having a principal place of business located at 201 South Fairfield Street, Ligonier, PA 15058.  In June 2010, Jillian authorized her mother, Debra Campayno, to purchase an insurance policy for La Spa.  Notes of Testimony (N.T.), 12/14/2015, at 34. On July 1, 2010, Debra signed a lease for the premises located at South Fairfield Street.  (Pl. Exhibit 10).

We adopt the following findings of fact from the trial court's opinion.

[The] underlying negligence action concerns an injury to
William Hornick allegedly suffered after receiving services,

_____

[1] The trial court certified the June 28, 2016 order as final pursuant to Pa.R.A.P. 341(c).  Order 7/26/2016; ***see also***, ***infra***, at 6.

including but not limited to a foot bath, at La Spa Ligonier [hereinafter "La Spa." La Spa is] owned by Jillian M. Campayno, Plaintiff in this action [hereinafter "Jillian"].

At the Non-Jury Trial Plaintiff Debra Campayno [hereinafter "Debra"] testified that La Spa [] was a sole proprietorship opened by her daughter, Jillian, in June of 2010. She testified that La Spa [] is a fictitious name owned by Jillian, and was a business which offered traditional day spa services, including massages, facials and some nail services. Jillian testified that it was her dream to open a day spa, and that she was finally able to do so in June of 2010.

Debra testified that she held the title of Director when she worked at La Spa [], which included duties such as answering the phone, bookkeeping, banking, paying the bills, and other tasks. During her three years of employment with La Spa [], she was an authorized signer on the business account. Accordingly, Debra testified that she assisted her daughter in doing the paperwork to establish the business. Debra testified that shortly after La Spa [] opened, she personally visited the Gooder Agency to secure insurance for the business, because Jillian was attending college and lived on-campus at the time. Jillian testified that she authorized her mother to do so. In attempting to carry out the task of acquiring insurance for the business, Debra testified that she explained to the insurance agent, Mr. Hoover, that she was helping her daughter establish her business, that she was there on her behalf, and asked for recommendations about what kind of insurance the business would need. She testified that based upon the meeting with Mr. Hoover, she understood that the business would need to obtain liability insurance as well as workmen's compensation insurance and a property insurance policy.

Debra testified that during her second meeting with Mr. Hoover she signed a Commercial Insurance Application for insurance through [Insurer], marked and admitted as Exhibit 1, which was completed on her behalf and listed the applicant as "La Spa Ligonier d/o Debby Campano," and identified the services as "Spa - massages, facials manicures and pedicures." [Debra] testified that her name was spelled incorrectly on the document, as it should have been "Debbie Campayno" or "Debra M. Campayno," which is how she typically would sign a document. [Debra] testified that she signed the document as an

- 3 -

authorized representative of Jillian [] and La Spa[].

Andrew Tews, Underwriting Administrator for [Insurer], testified that the proposal generated by Mr. Hoover of the Gooder Agency was based upon the signed application, and was transmitted to [Insurer]. Said proposal listed the applicant's name as "Debby Campano DBA La Spa Ligonier."

Debra testified as to the business model of La Spa [], explaining that in 2010 when La Spa opened, three therapists were employed, but they were later, sometime in 2011, considered independent contractors and were required to carry their own general liability insurance. One of said employees was Rachel Knapic, a Defendant in the underlying lawsuit, who was the technician who performed the spa services on Mr. Hornick. Debra testified that sometime after said services were performed, she received notice of the underlying lawsuit by way of receiving the underlying Complaint, which named Jillian Campayno i/d/b/a La Spa Ligonier as the sole Defendant. Accordingly, [Debra] submitted said Complaint to [Insurer].[2] Debra testified that she later received a phone call and letter from [Insurer], informing her that it did not appear that anyone insured by [Insurer] was being sued and that there was no obligation for [Insurer] to respond to the Complaint. Accordingly, she took the Complaint to her attorney, who spoke with opposing counsel, which caused the issuance of the Amended Complaint, naming as Defendants Jillian M. Campayno i/d/b/a La Spa Ligonier, Debra M. Campayno i/d/b/a La Spa Ligonier, and Rachel Knapic, and which she also faxed to [Insurer] with no response.

Subsequently, Debra testified that she received the Notice of Preacipe to Enter Judgment by Default Upon Defendant, Debra M. Campayno i/d/b/a La Spa Ligonier Pursuant to Pa.R.C.P. 237.5. This prompted her to contact [Insurer] again, after which time she received another letter informing her that there would

_____

[2] In March 2013, Mr. Hornick filed a civil action against Jillian Campayno d/b/a La Spa Ligonier. ***See William E. Hornick and Betty L. Hornick v. Jillian M. Campayno i/d/b/a La Spa Ligonier***, No. 6D 13-4060 (Allegheny Cty. CCP Mar. 5, 2013).

be no coverage or defense, citing an exclusion in the policy for bodily injury due to rendering professional services. Accordingly, [the trial court was] asked to determine whether coverage is triggered under the policy, and if so, whether [Insurer] has a duty to defend [Insureds] in the underlying negligence action.

Trial Ct. Op., 4/6/2016, at 2-4 (internal citations and unnecessary references to parties' last names omitted).

In December 2013, the Insureds commenced a suit against Insurer seeking declaratory relief regarding the Insurer's duty to defend and indemnify. In addition, the Insureds' complaint asserted causes of action for bad faith against Insurer and negligence against Bailey Insurance Company, the drafter of the insurance policy. **See, generally,** Second Amended Compl., 11/12/2014.

Following a trial in December 2015, the trial court issued an opinion and order declaring that both Debra and Jillian Campayno were Insureds under the subject policy, as they were sued in the capacity of "trading and doing business as La Spa Ligonier." **See** Opinion and Order, 4/1/2016. In addition, the court ruled that, due to the professional services exclusion of the policy in question, Insurer had no duty to defend Insureds in the underlying action. **See id.**

Thereafter, the court denied post-trial motions filed by the parties, but clarified its prior order. Order, 6/28/2016. Specifically, the trial court clarified that Insurer had neither a duty to defend nor indemnify Insureds in the underlying action based upon the professional services exclusion. **Id.** at

2-3.

The Insureds and Baily Insurance Agency filed motions to certify the trial court's June 28, 2016 order as final and appealable pursuant to 42 Pa.C.S. § 702(b). These motions were denied. On July 16, 2016, the court certified the June 28, 2016 order as immediately appealable pursuant to Pa.R.A.P. 341(c) and certified that an immediate appeal would facilitate a resolution of the entire case. *See* Order, 7/16/2016.[3]

On August 4, 2016, the Insureds and Insurer timely filed a joint notice of appeal to this Court. On August 10, 2016, Insurer timely filed notice of cross-appeal arising out of the determination of insurable interest. First, we will address the issues presented by Insurer and then proceed to address the issues raised by the Insureds.

> Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law. We may not substitute our judgment for that of the trial court if the court's determination is supported by the evidence. Additionally, [w]e will review the decision of the lower court as we would a decree in equity and set aside the factual conclusions of that court only where they are not supported by adequate evidence. The application of the law, however, is always subject to our review.

*Peters v. Natl. Interstate Ins. Co.*, 108 A.3d 38, 42 (Pa. Super. 2014)

---

[3] Further, the trial court certified that "the outcome of the appeal could nullify any need for a trial of the pending bad faith claims against [Insurer] and/or [Insureds] claims against Bailey [Insurance] Agency." Order, 7/16/2016, at 2 (noting a significant relationship between the declaratory judgment and any outstanding claims).

(quoting *Erie Ins. Grp. v. Catania*, 95 A.3d 320, 322 (Pa. Super. 2014))

(quoting *Pocono Summit Realty, LLC v. Ahmad Amer, LLC*, 52 A.3d 261,

265 (Pa. Super. 2012) (citations and quotation marks omitted)).

On appeal, Insurer raises the following three issues:

[1.]  Should the court have held that the businessowners liability policy afforded no coverage to Debra Campayno for the business operations conducted at the spa because she lacked an insurable interest in the business?

[2.]  Should the court have held that [Insurer] was not required to provide defense and indemnity because Jillian Campayno was not an insured under the policy?

[3.]  Whether the court erred in making its findings of fact by failing to consider Mr. Hoover's deposition testimony, which was consistent with the documentary evidence presented at trial?

Insurer's Br. at 4-5 (reordered for ease of analysis).

First, Insurer contends that Debra Campayno lacked an insurable

interest in the business operations conducted by her daughter Jillian at La

Spa.  Insurer's Br. at 59, 64.  Insurer notes that Debra does not own La Spa

and that her application designated the insured entity as an individual, not a

business.  *See id.* at 60.  Insurer maintains that for an individual to be

doing business as a fictitious entity, the individual must hold an equitable or

legal interest in the business operations to establish insurable interest.  *Id.*

at 63-64 (offering non-binding caselaw from other jurisdictions).  According

to Insurer, Debra "would have had, at most, an insurable interest in the

premises where the spa was located," based on her status as lessee of the

property, "but she would have had no insurable interest whatsoever in the

- 7 -

operations conducted there by her daughter, Jillian[.]" *Id.* at 57. In support of its contention, Insurer has cited one Third Circuit case applying Delaware law and several decisions from other forums. *Id.* at 62.[4]

Insurer's reliance on foreign precedent is misplaced. Under Pennsylvania law, insurable interest is measured according to the factual expectation theory. *Van Cure v. Hartford Fire Ins. Co.*, 253 A.2d 663, 665 (Pa. 1969) (4-2 decision) (majority adopting factual expectation theory of insurable interest); *Seals, Inc. v. Tioga County Grange Mut. Ins. Co.*, 519 A.2d 951, 958 (Pa. Super. 1986), *appeal dismissed as improvidently granted*, 541 A.2d 314 (Pa. 1988). The factual expectation theory states: "anyone who has an expectation of economic benefit from the preservation of property or an expectation of loss from its destruction, regardless of his relation to the property, has an insurable interest." *Van Cure*, 253 A.2d at 665 (reasoning that "often a [person] with no legally enforceable interest may suffer more from the destruction of property than a [person] who holds title"); *see Seals*, 519 A.2d at 957.[5] "Generally, whether a person has an

---

[4] According to Insurer, the designation, doing business as, "simply indicated that she was operating a sole proprietorship under a fictitious business name." Insurer's Br. at 60-61 (citing California Court of Appeals decision). Essentially, Insurer contends that the court failed to find that the policy only applied to Debra as an individual based on her status as lessee of the property, and nothing more. *Id.* at 61-62 (citing North Dakota decision).

[5] *See, e.g., Fugah v. State Farm Fire & Cas. Co.*, 145 F.Supp.3d 415, 420 (E.D. Pa. 2015) (insurable interest established by sufficient evidence for
*(Footnote Continued Next Page)*

insurable interest is an issue to be decided by the finder of fact." ***Alberici v. Safeguard Mut. Ins. Co.***, 664 A.2d 110, 113 (Pa. Super. 1995) (citation omitted).

Moreover, "one who makes a legally enforceable agreement to obtain insurance on property for the benefit of another has an insurable interest supporting a contract of insurance of the property even in his own name." ***Luchansky v. Farmers Fire Ins. Co.***, 515 A.2d 598, 600 (Pa. Super. 1986) (citations omitted). The expectation that payments will be used to satisfy the insurer's obligation to the insured has been held sufficient as evidence of an insurable interest. ***Seals***, 519 A.2d at 959.

> Here, the factfinder determined the following:
>
> La Spa Ligonier paid for insurance coverage out of its business account, as demonstrated by Exhibit 7, and said fictitious name appears on the subject policy. Additionally, the Court notes that Debra Campayno was the named lessee for the business property and had a cognizable insurable interest to trigger policy coverage, while Jillian Campayno was the registered owner of the fictitious name, which was identified on the policy. Accordingly, the Court finds that there was an insurable interest under the subject policy, entitling La Spa Ligonier to the coverage it paid for.

Trial Ct. Op. (TCO), 4/1/2016, at 6. According to the Insureds, these findings of fact led the trial court to make a reasonable conclusion that La Spa was entitled to the insurance coverage that it paid for. ***See*** Insureds'

_(Footnote Continued)_ ───────

factfinder to believe that he "stood to gain from the property's continued existence and would suffer a pecuniary loss from its destruction").

- 9 -

Reply Br. at 12.

The record supports the trial court's findings.  ***See Alberici***, 664 A.2d at 113.  La Spa's name appears on the application for insurance and the insurance policy.[6]  The application for insurance was in the name of "La Spa Ligonier c/o Debby Campayno."  ***See*** N.T. at 44.  Under the description of the premises, the nature of the business was identified as "Spa - massages, facials, manicures, and pedicures."  ***Id.*** at 45.  Debra signed the document as "authorized representative of the applicant."  ***Id.*** at 46.

As an employee of La Spa and as lessee of the business premises, Debra had an expectation of economic benefit from its continued operation and an expectation of loss from its destruction.  ***See Van Cure***, 253 A.2d at 665.  Thus, Debra has an insurable interest.  ***Luchanksy***, 515 A.2d at 600.  Accordingly, Insurer's argument is without merit.  The trial court did not err or abuse its discretion.[7]

_____

[6] "An application is an integral part of a policy, and the questions and answers contained therein are material to the risks which both the company and the insured assume."  ***Peters v. World Mut. Health & Accident Ins. Co.,*** 213 A.2d 116, 118 (Pa. Super. 1965).

[7] To the extent that La Spa Ligonier was named as a defendant or entity in Hornick's complaint, the Insurer had a duty to examine the complaint to determine whether or not the claim was covered by the policy, *i.e.*, if it arose from general liability of landowners to business invitees or fell within the professional services exclusion.  Debra's insurable interest does not extend to operations of the spa itself because the policy does not insure against that type of loss, as discussed further below.

Next, Insurer argues that Jillian Campayno was not an insured. **See** Insurer's Br. at 64. Insurer argues that the express terms of the policy define "an insured" as the individual designated in the declarations and the individual's spouse, "with respect to the conduct of a business of which [the individual] is a sole owner." AOI Policy at p. 8. Because Jillian is sole owner of La Spa and the policy does not designate Jillian as an insured in the declarations, Insurer maintains that Jillian is not insured. **See** N.T. at 187.

According to the trial court's findings of fact, it is "undisputed that Debra Campayno i/d/b/a La Spa Ligonier sought insurance on her daughter's behalf in assisting her in opening her business." **See** TCO at 5. Here, a policy was issued for insurance at La Spa and premiums were paid by La Spa's business account with the expectation of insurance coverage. **See id.** at 6 (citing Exhibit 7). Further, Jillian is the owner of the fictitious entity, La Spa, which is named on the policy. Jillian also "'derives pecuniary benefit or advantage form the preservation or continued existence of [] property or will suffer pecuniary loss from its destruction.'" **Alberici**, 664 A.2d at 114 (quoting **Luchansky**, 515 A.2d at 599). Therefore, Jillian has an insurable interest that arises from her ownership interest in La Spa and the fact that La Spa paid premiums with the expectation of coverage *of the type covered by the policy*. **Luchanksy**, 515 A.2d at 600 (noting that parents who had purchased insurance on behalf of son had an insurable interest such that the insurance company is contractually obligated to pay where son did not

purchase separate insurance even though he was true titleholder). As the trial court's findings are supported by the record, we discern no abuse of discretion or error of law. Accordingly, Insurer's argument is without merit.

In the third issue, Insurer challenges the weight of the evidence. Insurer asserts that the court overlooked, misapprehended, or failed to consider certain evidence, such as Mr. Hoover's testimony. Insurer maintains that Mr. Hoover's testimony was consistent with the documentary evidence submitted at trial. On that basis, Insurer argues that the court erred in finding Debra Campayno's testimony more credible than Mr. Hoover. Insurer urges this court to vacate the findings that Jillian and La Spa were insured. *See* AOI Br. at 53-57.

"It is well-established that decisions regarding the weight and the credibility of testimony are within the province of the trier of fact and will not be disturbed upon our cold review of the record." *Am. States Ins. Co. v. Maryland Cas. Co.*, 628 A.2d 880, 893 (Pa. Super. 1993). "Since the trial judge is in the best position to judge the credibility of the witnesses, an appellate court may not re-examine the weight to be given to their testimony." *Alberici*, 664 A.2d at 113 (citation omitted). Here, the trial court was free to find Debra's testimony credible over other witnesses. Finding competent evidentiary support for the trial court's conclusion, we will not usurp the trial court's fact-finding function. Accordingly, Appellant's argument is without merit.

We proceed to address the following issues raised by the Insureds on appeal.

    A. Whether the trial court erred as a matter of law by construing the ambiguity created by the undefined term 'Professional Services' against the Insured and not against the Author of the contract?

    B. Whether the trial court erred as a matter of law by creating and analyzing the criterion of 'skill and training' instead of the conduct which allegedly caused the underlying injury?

    C. Whether the trial court erred as a matter of law by limiting its analysis to only the Third Amended Complaint instead of reviewing each of the Hornicks' prior Complaints to determine if coverage was triggered under the Policy?

    D. Whether the trial court erred by failing to read the Policy as a whole in determining whether coverage was triggered under the Policy?

Insureds' Br. at 22.

The Insureds' first and second issues are related to the trial court's interpretation of the insurance contract, in particular the professional services exclusion.  In the first issue, the Insureds contend that the court erred in two respects: (1) failing to find the professional services exclusion ambiguous and (2) failing to construe the ambiguity in favor of the Insureds. They argue that an insurer who asserts a defense based on an exclusion bears the burden of establishing that such exclusion applies.  **See** Insureds' Br. at 41-42.

In response, Insurer contends that the trial court properly held that

the professional services exclusion applied to services rendered at the spa

and negated coverage for the underlying claims. **See** Insurer's Br. at 32.[8]

Our standard of review is as follows.

> [I]t is the duty of the insurer to defend a claim that would support recovery until such time as it is determined that the claim is not covered under the policy. The first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage. After determining the scope of coverage, the court must examine the complaint in the underlying action to ascertain if it triggers coverage.

**Stevens Painton Corp. v. First State Ins. Co.**, 746 A.2d 649, 656 (Pa.

Super. 2000) (internal citations and quotation marks omitted). The

interpretation of an insurance policy involves the interpretation of a contract.

The interpretation of a contract is an issue of law for which our standard of

review is *de novo*. **401 Fourth Street v. Investors Insurance Co.**, 879

A.2d 166, 170 (Pa. 2005). Our primary goal is to ascertain the parties'

intentions as manifested by the policy's terms and to give effect to language

that is clear and unambiguous. **401 Fourth Street**, 879 A.2d at 170.

> Where the language of the insurance contract is clear and unambiguous, a court is required to give effect to that language.

---

[8] Insurer relies heavily on **Knorr v. Commercial Cas. Ins. Co.**, 90 A.2d 387 (Pa. Super. 1952) (holding that policy with professional services exclusion precluded coverage for an injury at a barbershop where beauty shop patron was injured in the head by a hair dryer) (application for *allocatur* denied on Sept. 24, 1952). In that case, the court recognized the admissibility of parol evidence to clarify a policy-based exclusion where the court finds such terms to be ambiguous. Here, the trial court did not find the terms of the exclusion ambiguous.

- 14 -

> When construing a policy, words of common usage are to be construed in their natural, plain and ordinary sense and we may inform our understanding of these terms by considering their dictionary definitions. While a court must not distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity, it must find that the contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. *Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement.*

*Egger v. Gulf Ins. Co.*, 864 A.2d 1234, 1242-43 (Pa. Super. 2004), *aff'd*, 903 A.2d 1219 (Pa. 2006) (citations and internal quotation marks omitted) (emphasis added). Moreover,

> … contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. We will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. *The polestar of our inquiry, therefore, is the language of the insurance policy.*

*Madison Const. v. Harleysville Mut. Ins.*, 735 A.2d 100, 106 (Pa. 1999) (internal citations omitted) (emphasis added).

"Where an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense." *Madison Const.*, 735 A.2d at 106. Moreover, if an insurer relies on a policy exclusion that is reasonably susceptible to two interpretations, "it is to to be construed in favor of the insured in order not to defeat, without plain necessity, the claims to indemnity which it was the insured's object to obtain." *Egger*, 864 A.2d at 1245 (quoting *Peters*, 213 A.2d at 218).

The language of the insurance policy under which the Insureds claim coverage states:

**A. COVERAGES**

   **1. Business Liability**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which insurance applies.  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for….

   a. This insurance applies only:

      (1) To "bodily injury" or "property damage":

         (a)  That occurs during the policy period; and

         (b)  That is caused by an "occurrence". The "occurrence"[9] must take place in the "coverage territory".

      (2) To "personal injury" caused by an offense:

         (a) Committed in the "coverage territory" during the policy period; and

         (b) Arising out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you.

                    […]

   b. We will have the right and duty to defend any "suit" seeking those damages.[10]  But

---

[9] ¶ 9 "Occurrence" is defined as an accident, including continuous or repeated exposure to substantially the same general harmful conditions. **See** AOI Policy at 13.

(1) The amount we will pay for damages is limited as described in Section D – Limits of Insurance;

(2) We may investigate and settle any claim or "suit" at our discretion; and

(3) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgment or settlements or medical expenses.

Auto-Owners Insurance Policy at 1 ("AOI Policy").

The policy also provides six pages of exclusions, of particular relevance is the exclusion for injuries arising from professional services, which states:

## B. EXCLUSIONS

1.    Applicable to Business Liability Coverage –This insurance does not apply to: […]

j. "Bodily Injury" or "property damage" due to *rendering or failure to render any professional service*.  This includes but is not limited to:

(1) Legal, accounting or advertising services;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Supervisory, inspection or engineering services;

(4) Medical, surgical, dental, x-ray or

_(Footnote Continued)_ ─────────────

[10] ¶ 13 "Suit" is defined as a civil proceeding for damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged.  **See** AOI Policy at 14.

nursing services or treatment;

(5) Any health service or treatment;

(6) Any cosmetic or tonsorial service or treatment;

(7) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration, or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8) Ear piercing services; and

(9) Services in the practice of pharmacy; but this exclusion does not apply to an insured whose operations include those of a retail druggist or drugstore.

AOI Policy at 2, 4-5 (emphasis added).

The professional services exclusion is unambiguous. According to the plain and ordinary meaning of its terms, this provision excludes coverage for bodily injury or property damage arising out of any professional services. *401 Fourth Street*, 879 A.2d at 170. The exclusion further provides a non-exhaustive list of examples, clarifying what constitutes a professional service. Here, the court found that "although spa services are not specifically listed … the policy states that it 'includes but is not limited to the enumerated services[.]'" TCO at 8. We agree. Contrary to Insureds' contention, there was no ambiguity in the policy terms for the court to construe in their favor. Accordingly, their argument is without merit. We now turn to address the application of this exclusion to the services rendered by La Spa.

In their second issue, the Insureds contend the trial court erred by focusing on the "skills and training" of La Spa's independent contractors to determine whether the professional services exclusion as opposed to the "nature of the conduct alleged" in Hornick's complaint. Insureds' Br. at 49. They claim that the court erred in focusing on the fact that the "Footsie Bath" machine was operated only by licensed spa technicians. *Id.* They maintain that there was no evidence offered to establish that the operation of the Footsie Bath required a special license or skill. *See id.* The Insureds maintain that Insurer failed to sustain its burden to prove that the exclusion applied to La Spa's operations. The Insureds' argument is without merit.

To meet its burden of proof to establish that the exclusion applied to professional services rendered by La Spa, Insurer provided evidence that La Spa primarily is in the business of offering cosmetological services. As noted above, the insurance policy does not apply to bodily injury due to rendering or failure to rend any professional service, including but not limited to, "any cosmetic … service or treatment." AOI Policy at 4-5. Cosmetic services are services performed by cosmetologists. Cosmetology is defined by statute to include "any or all work done for compensation by any person, which work is generally and usually performed by cosmologists[.]" 63 P.S. § 507. In order to provide such services for compensation, La Spa Ligonier's employees were required to hold a professional license provided by the State Board of Cosmetology. *See id.* at § 508 (authorizing only licensed technicians to practice cosmetology for compensation); *see id.* at § 514

(cosmetology services can only be performed in a licensed salon).

Based on this evidence, the court concluded that the service provided to Mr. Hornick required special "skills and training" of a licensed cosmetologist. TCO at 8. Moreover, the court found "all of the allegations for negligence in the underlying Complaint suggest negligence in the discharge of services which require special skill or training." *See id.* The allegations regarding the spa technicians' skills and training, *i.e.* licensure, was relevant to determining whether the policy coverage was available for the bodily injury alleged in the complaint. The allegations were made against Jillian, Debra, and Knapic, that they provided services in their respective capacities as "owner, director and/or licensed cosmetologist and/or licensed massage therapist, of, at, for and on behalf of La Spa Ligonier." *See, e.g.,* Hornick's Third Amended Compl., at ¶¶ 8-9. The employees' skills and training was important to determine that the claim is not covered by the policy, since the policy does not provide coverage for services performed by licensed cosmetologists for compensation. However, there was no critical ambiguity in the policy exclusion to construe in the Insureds' favor. *Cf. Egger*, 864 A.2d at 1245. Accordingly, we discern no error of law or abuse of the trial court's discretion.

Third, the Insureds contend that the "mixed allegations" in the third amended complaint potentially fell within the scope of coverage and triggered Insurer's duty to defend. Insureds' Br. at 56. According to the Insureds, these allegations "concern matters of ordinary conduct not

- 20 -

requiring any specialized skill or knowledge." *Id.* at 58. The Insureds also suggest that the allegations in Mr. Hornick's complaint may have made out a claim for negligent misrepresentation. *See id.* at 58-59.[11] According to the Insureds, the allegations triggered the duty to defend because a misrepresentation would not require any "special skill." *Id.* at 58-59.

"An insurer's obligation to defend is fixed solely by the allegations in the underlying complaint." *Atlantic Mut. Ins. Co. v. Gula*, 926 A.2d 449, 450 (Pa. Super. 2007) ("*Gula*") (citation omitted).

> The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint. An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy.

*Am. and For. Ins. Co. v. Jerry's Sport Ctr.*, 2 A.3d 526, 541 (Pa. 2010). "The duty to defend persists until an insurer can limit the claims such that coverage is impossible." *Lexington Ins. Co. v. Charter Oak Fire Ins. Co.*, 81 A.3d 903, 911 (Pa. Super. 2013).

> The law is clear that when an insured who has been sued requests coverage under a policy of insurance, the insurer is required to accept all of the allegations contained in the third party's complaint as true and provide a defense if there is a chance that the injury alleged could potentially fall within the scope of the policy.

---

[11] The complaint does not assert negligent misrepresentation. Therefore, we reject this contention.

*Sel. Way Ins. Co. v. Hosp. Group Services, Inc.*, 119 A.3d 1035, 1046 (Pa. Super. 2015) (citation omitted).

Accepting the factual allegations as true, the third amended complaint alleged that Debra was contacted by Mr. Hornick's daughter ("Daughter") who inquired about spa and massage services for her parents. *See* Third Amended Compl., at ¶¶14-15. Daughter informed Debra about the complications of diabetic neuropathy and Debra assured Daughter that precautions would be taken. *See id.* at ¶15. Further, Debra made "special arrangements" with the staff "to provide services" to Mr. Hornick on a date when the spa would have been closed. *See id.* at ¶16. Debra advised Daughter that she, Jillian, and La Spa staff would "develop a special spa and massage package of services for the [p]laintiffs, including a massage package that would stimulate circulation in [Mr. Hornick's] feet." *See id.* at ¶16.

On the date of the injury, La Spa personnel "used massage techniques, implements, tools, and/or devices, including mechanical and/or electromechanical devices in the course of providing the massage services to [Mr. Hornick], including [his] feet." *Id.* at ¶ 18. One of these services involved the use of a "Footsie Bath" - the manufacturer of which was also added as a defendant to the underlying complaint. *See id.* at ¶ 19. La Spa personnel also "used body wraps, body scrubs, oils, creams, gels, [etc.] in the course of providing the spa services[.]" *See id.* at ¶ 20. "Soon after

[Mr. Hornick] underwent the prearranged massage and spa therapy services, [he] developed serious burns and open wounds to both feet." *Id.* at ¶ 21.

The third amended complaint alleged that the defendants "acted in their respective capacities as owner, director and/or licensed cosmetology and/or licensed massage therapist." *Id.* at ¶ 8.  The Insured's co-defendant Knapic, the "individual who performs services at, for and on behalf of [La Spa]," "acted in her capacity as a licensed cosmetologist and or licensed massage therapist[.]" *Id.* at ¶ 9.

Counts I, II, and III of the underlying complaint assert negligence, respondeat superior, and loss of consortium.  Count I arises from the allegation that La Spa professionals failed to provide services within the applicable standard of care of a reasonably prudent spa professional.  The allegations specifically state that Daughter solicited professional services from licensed cosmetologists at a licensed salon.  After soliciting services from a licensed spa and undergoing a prearranged foot soak and massage by licensed professionals, Mr. Hornick allegedly developed, *inter alia*, severe burns from the use of a Footsie Bath.

Count II, respondeat superior, arises out of the rendering or failure to render professional services.  Debra acted in a supervisory capacity by representing that La Spa would exercise appropriate skill and care in taking precautions to develop a special spa and massage package of services for Mr. Hornick.  Debra acted in a manner that implied "a level of training, a

- 23 -

weighing of factors and use of judgment that is the hallmark of a professional service." ***Gula***, 926 A.2d at 451. Debra did not act merely as "an administrative functionary that stamps paperwork and processes payment." ***Id.*** Count III, loss of consortium, consists of allegations that are the incidental, consequential and a direct result of the bodily injury caused by the professional service rendered to Mr. Hornick.

Even an injury caused by mechanical equipment used by licensed professionals in the course of rendering a professional service is an injury resulting from the rendering or failure to render a professional service. ***See Knorr***, 90 A.2d at 388. Here, the allegations in the complaint refer to the type of bodily injury from rendering or failure to render professional services, which is excluded by the insurance policy. Turning to the insurance policy, it does not provide coverage for "bodily injury" "arising from the rendering of failure to render professional services," including but not limited to, any "cosmetic treatment," "supervisory, inspection or engineering services," or "any health service or treatment." AOI Policy at 4-5.

Comparing the four corners of the complaint and the insurance policy, the Insurer could determine that the allegations focus on the fact that services provided to Mr. Hornick were professional services as defined by the policy. As the policy provides no potential coverage for injuries arising from professional services, the Insurer had no duty to defend based on the face of Mr. Hornick's complaint. ***Jerry's Sport Ctr***, 2 A.3d at 541. Thus, the trial

court did not err in concluding that Insurer has no duty to defend or indemnify the Insureds in the underlying case. **See Gula**, 926 A.2d at 451 (affirming summary judgment in favor of insurer, finding no duty to defend or indemnify where insured failed to satisfy prerequisites for coverage such as applicability of the policy to the claim in question).

Fourth, the Insureds argue that the trial court failed to construe the policy as a whole. **See** Insureds' Br. at 63. They argue that the court erred in finding spa services within the scope of the professional services exclusion because the exclusion specifically identifies only nine categories of professional services and spa services are not identified. They assert that the trial court failed to resolve a perceived ambiguity in the policy in their favor. **See id.** at 66-67. Appellants' argument is without merit.

Essentially, the Insureds' fourth issue revisits arguments raised in support of their first and second issues regarding the exclusion's alleged ambiguity. We need not examine their arguments further. Construing the policy as a whole, Debra obtained a premises liability policy on behalf of her daughter and La Spa, as opposed to a professional liability policy for the spa operations. Therefore, the trial court correctly meted out the professional services exclusion to deny coverage for an injury arising from professional activities of La Spa.

In conclusion, the Insureds and La Spa have an expectation of insurance coverage under the AOI policy. However, Insurer has no duty to

defend or indemnify in the underlying case because the allegations arise from a bodily injury sustained as a result of the rendering or failure to render professional services. Because Insurer has no duty to defend the underlying action, we need not address the issue of indemnification. Accordingly, we discern no error of law or abuse of the trial court's discretion.

Order affirmed.

Judge Solano joins the memorandum.

Judge Olson concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/23/2017